Judgment appealed from modified so as to declare the legacy to Josiah Colvin Young a lien on the lands to be sold to the extent of $375, with interest from the death of the executrix, such amount to be paid to the appellant out of the proceeds of the sale before the distribution thereof, and as modified affirmed, with costs of this appeal payable out of the fund.

---

HYMON BLOOM, Suing on His Own Behalf, etc., and Others, Respondents, *v.* THE NATIONAL UNITED BENEFIT SAVINGS AND LOAN COMPANY and Others, Appellants.

*Trial of an action — order of reference continuing a trial begun at Special Term, how reviewed — waiver of the error in the order of reference — liability of the directors of a corporation for the misconduct of its officers — action to charge them with it — burden of proof.*

Where the trial of an action has taken place at Special Term and the evidence taken therein has been closed, it is not within the power of the Supreme Court to make an order permitting the plaintiff to introduce further proof, and referring the action to a referee to hear the additional evidence, and upon it and the stenographer's minutes of the evidence taken on the trial to determine the action, without the consent of the parties; if the court make such an order it may be reviewed by an appeal from the same.

It cannot be reviewed under the provisions of section 1316 of the Code of Civil Procedure, upon an appeal from the final judgment rendered in the action, as the order does not necessarily affect the final judgment.

Where no appeal was taken from the order of reference, and both the parties to the action participated in the trial so ordered before the referee, an objection taken by one of them before the referee, that the referee had no right to proceed with the trial because the court had no right to make such order, is deemed to have been waived and is not available upon an appeal from the final judgment rendered in the action.

The directors of a corporation are its managing officers, and are primarily liable to it for losses occasioned by their negligence, for which it has a remedy by

an action at law. Their legal privity is with the corporation only, but when a corporation refuses to sue for such cause, or when it is controlled by the directors who are charged with liability, and, therefore, may be supposed not to permit a faithful prosecution of themselves, a shareholder may bring an action in equity for the requisite relief, to which action the corporation must be made a party defendant, and the practical purpose of the action is the restoration, for the benefit of all concerned, of the corporate funds or property wasted or lost by the culpable fault of the directors of the corporation.

The directors of a corporation must exercise the same degree of care and prudence in the management of the affairs of the company that men directed by self-interest generally exercise in their own affairs, and where the directors are advised of the misconduct of the officers of the corporation, and unduly permit them to remain in office without taking any action for their removal, they subject themselves to the imputation of negligence, and become liable for the consequences of the subsequent peculations of the officers to the prejudice of the corporation ; they are, however, neither insurers nor sureties for the fidelity of the officers of the company, and are liable only for losses of its funds attributable to their negligence.

In an action brought to charge the directors of a corporation with personal liability for the loss of the corporate property, the burden is upon the plaintiff to prove that the misappropriation of the moneys of the corporation by the guilty officers thereof was permitted by the negligence of the directors.

APPEAL by the defendants, The National United Benefit Savings and Loan Company and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Monroe on the 31st day of January, 1894, upon the report of a referee, with notice of an intention to bring up for review on such appeal the interlocutory judgment entered in said clerk's office on the 20th day of November, 1893, and an order entered in said clerk's office on the 13th day of June, 1892, reopening the proof in the action and referring the same to a referee to hear and determine, and the order entered in said clerk's office on the 31st day of January, 1894, confirming the referee's report on an accounting.

*John H. Hopkins*, for the appellants.

*J. B. M. Stevens*, for the respondents.

BRADLEY, J.:

The defendants other than the company were directors of The National United Benefit Savings and Loan Company. The action

is brought against them to recover damages resulting from their alleged negligent mismanagement of the affairs of the company. The trial proceeded at Special Term and the evidence was there deemed closed. But upon motion made by the original plaintiff and opposed by the defendants, an order was made by the court that the plaintiff be permitted to introduce further evidence for certain purposes, and that as a condition of reopening the proofs the cause be sent to a referee to hear the additional evidence, and upon it and the stenographer's minutes of the evidence taken on the trial at the Special Term he determine all the issues in the action, and it was referred to a referee named to hear and determine them. When it came on to hearing before the referee the defendants' counsel objected that he had no right to proceed with the trial under the order because the court had no power to make it. The objection was overruled. Exception taken, and the trial proceeded.

It was not within the power of the court to make the order of reference, and submit to the referee the evidence before taken, without the consent of the parties, and the error was reviewable by appeal from the order. No appeal from it was taken by the defendants within the time prescribed by the statute for that purpose. But they took part in the trial before the referee.

The defendants seek to review the order on appeal from the final judgment pursuant to the statute, which provides that an appeal from a final judgment brings up for review " an intermediate order which is specified in the notice of appeal, and necessarily affects the final judgment." (Code Civ. Proc. § 1316.)

The order did not necessarily affect the final judgment, and, therefore, does not come within the provisions of that section. And since the parties participated in the trial upon the merits until the result given by the judgment was reached, the objection taken by the defendants at the outset before the referee is not available to them on this review. The failure to appeal from the order and proceeding to the trial may be treated as a relinquishment of the right to now assert objection to the reference.

The defendant company was a corporation created pursuant to "An act for the incorporation of building, mutual loan and accumulating fund associations." (Laws 1851, chap. 122.) It was organized August 14, 1890. The articles of association were subscribed

by the defendants and by E. I. Nagelstein, W. R. Horne and Charles Pscherhofer. Thereupon, Tracy was elected president, Nagelstein vice-president, Pscherhofer treasurer, and Horne secretary. The business existence of the company was short. On October 15, 1890, the directors, other than the three last above named, and Makk, joined in a petition to the court for its voluntary dissolution, in which petition it was represented that in the meantime 1,320 shares had been subscribed to the capital stock, upon which $2,327.25 had been paid, and that there was no money in the treasury to make the loans contemplated by the payment of the money upon such shares. The losses suffered by the corporation were occasioned by the malfeasance in office of the vice-president, secretary and treasurer.

There is no support in the evidence for any charge of bad faith or affirmative breach of trust on the part of the defendants. The charge made against them is that of negligence. The funds were those of the corporation for certain legitimate purposes. The legal privity of the directors is with the corporation only. They are its managing officers, and are primarily liable to it for losses occasioned by their negligence, for which it has a remedy by action at law. (*Hun* v. *Cary*, 82 N. Y. 65.) But when a corporation refuses to sue for such cause, or when it is controlled by directors who are charged with liability, and, therefore, may be supposed not to permit a faithful prosecution of themselves, a shareholder may bring an action in equity for the requisite relief. (*Robinson* v. *Smith*, 3 Paige, 222; *Greaves* v. *Gouge*, 69 N. Y. 154.)

This right arises out of the interest the stockholders have in the preservation of the corporate property and the trust relation of the directors to them. The corporation must necessarily be made a party defendant. And the practical purpose of the action is the restoration, for the benefit of all concerned, of the corporate funds or property wasted or lost by the culpable fault of the directors. (*Davenport* v. *Dows*, 18 Wall. 626; *Craig* v. *Gregg*, 83 Penn. St. 19; *Brinckerhoff* v. *Bostwick*, 99 N. Y. 185, 194.) The substantial interests are in the stockholders, and in the present case it seems that the corporation has for all practical purposes ceased to have any potential existence. The directors undertook to exercise ordinary care in the management of the affairs of the company, and as was said in *Hun* v. *Cary*, " the same degree of care and prudence that

men prompted by self-interest generally exercise in their own affairs."

The burden is with the plaintiff to prove that the appropriation of the moneys of the corporation by the guilty officers was permitted by the negligence of the defendants. It now appears that such officers were not worthy of any trust, and the charge is made of want of diligence on the part of the defendants in not learning that they were unfit for the offices before their election to them. The defendants then evidently had confidence in their ability and integrity. One of the defendants had known Pscherhofer for four years and spoke highly of him to one or more of the other defendants, who had known him much less time. He assumed to be familiar with the contemplated corporate business, and Nagelstein and Horne co-operated with him in organizing the company. They assumed a knowledge of the business not possessed by the other directors. They were, therefore, placed in those official positions. The secretary and treasurer were respectively required to give bonds with surety to be approved by the president. It was done. This apparently was reasonably sufficient to render their relation to the offices satisfactory.

They alone were authorized to receive the money. It was not within the duties of the vice-president to handle any of the money of the corporation. The defendants cannot well be charged with negligence in the outset.

The Union Bank of Rochester was designated as the place for deposit of the corporate funds. The by-laws provided that checks drawn upon the loan fund should be signed by the president, secretary and treasurer, and those drawn on the expense fund be signed by the secretary and treasurer. And it appears that some of the officers of the bank were so advised.

A few days prior to August 27, 1890, one Groh made application for forty shares of stock of the par value of $100 each, and he assigned to Nagelstein and Horne a mortgage against one Kraft, which exceeded in value that of the stock by something over $300, which was paid to him. On that day the mortgage was transferred to the bank to secure the payment of a note made to obtain a loan of the sum of $3,000, of which $2,500 was there credited to the loan fund and $500 to the expense fund of the corporation. This

loan was in excess of that which the company was authorized to make. (Laws 1851, chap. 122, § 5.)

Afterwards Groh asserted that the assignment of the mortgage was obtained from him by fraud, and sought to reclaim it, and his attorney upon such charge obtained restoration of it to his client, and the amount paid to him at the time of the assignment was refunded. And thereupon Pscherhofer and four other directors, who are the defendants other than Makk, gave their individual notes to the bank in place of that before mentioned, and those four defendants paid the amount of it, aided in doing so by the proceeds, amounting to about $1,600, of a mortgage taken on the loan of a portion of that $3,000. It is not seen that the imputation of negligence of the defendants, resulting in the loss of any of the money of the corporation, arises out of the transaction of the loan from the bank. The amount of it was all paid without the use of any of the funds of the company other than the portion before mentioned of the amount of such loan. It is, however, urged that the Kraft mortgage should not have been surrendered to Groh. No certificate of stock had been issued to him. He made the charge of fraud, and it seems that it was deemed advisable to avoid a contest in the matter by giving it back to him. The circumstances of the fraud charged do not appear in the record. It must be assumed that the directors acted in good faith in returning it to him, and if there was any mistake made in doing so it was mere error of judgment for which they are not chargeable with liability.

The unfaithfulness and dishonesty of Nagelstein, Pscherhofer and Horne in their relation to the company appears. And the defendants are charged with culpable negligence in permitting them to remain in the positions to which they had been elected as officers and assigned as members of the executive committee. If the defendants were advised of the misconduct of those persons, and unduly permitted them to remain in those places without any action for their removal, they subjected themselves to the imputation of negligence, and became liable for the consequences of their subsequent peculations to the prejudice of the company.

About the first of September the attention of the directors was called to the fact that Nagelstein had received $600, and the matter was called up, and, as appears by the minutes of a meeting of the

directors, he then said such amount had gone into his pocket as commissions for obtaining shares for another company which were transferred to this company, and the matter was then dropped for the time being to be thereafter examined. There seems to be no further account of that money nor does it appear how or from whom he received it. Afterwards he was required to and finally did resign his position as an officer of the company. It does not appear that he subsequently received any other money.

On September thirteenth, at a meeting of the directors, one of them called attention to the fact that the secretary, Horne, was inattentive to his official duties, and it also appeared that his habits were bad. He was soon after dismissed from his office. It seems that Pscherhofer, the treasurer, retained longer the confidence of the directors, and he joined with them in demanding the resignation of the vice-president and the removal of the secretary.

He, as treasurer, was called upon to submit his book for examination, and after some delay it was produced. It was found to be incorrect. He said he would look it over and submit it at the next meeting. Then it was found that some pages had been torn out and a new account entered. This was found to be incorrect and charge was made against him to that effect. He became excited and tore the book to pieces.

This was near the time that the company ceased to do business. There is evidence tending to prove that the secretary and treasurer were requested from time to time to render their accounts. They stated that it was necessary to have a certain kind of books adapted to the purpose, and that they had been ordered from the city of New York. This seems to have been a method or pretext employed for delay.

It is quite evident that the defendants were the victims of misplaced confidence. They possibly may have been less vigilant than they would have been if the bonds of the secretary and treasurer had not been given, and they may have deemed the loan fund in the bank comparatively safe from the fact that the by-laws did not permit it to be drawn without the check of three officers, of whom the president (Tracy) was one. This requirement was not observed in drawing upwards of $600 of that fund. The condition of insolvency of the company was reached in less than two months after its

organization. Some money was required and used for expenses, and in the payment of officers' salaries. The amount paid upon subscriptions to shares in excess of those expenses and salaries was illegally appropriated by the three officers before mentioned or some of them. It appears that the moneys deposited in the bank, before then, were drawn out prior to September 13, 1890.

A considerable portion of the moneys paid in by subscribers to shares did not go into the bank. Although the by-laws required that certificates of stock should be signed by the president he signed none. It seems that the subscriptions were not reported to him, and that he was not advised that the certificates had been issued until shortly before the company ceased to do business.

After the defendant Sheridan took the position of secretary, and before the condition of the company was fully ascertained, he and two other directors each contributed $100 to his credit in the bank to place the company in a situation to take care of its matters. But as it turned out on further investigation the sum so contributed was only little aid toward relief.

The only support found in the evidence for the charge of culpable negligence on the part of the defendants is in their omission to get rid of those officers respectively without delay after their unfitness was or should have been ascertained or suspected by them. The question as to the amount of money of the corporation lost for such cause after that time is not answered by the findings of the referee, nor does it appear by the evidence that the defendants were upon such charge liable to the original plaintiff and those who came in as such for the amount awarded to them upon the direction given by the interlocutory judgment.

The defendants are neither insurers or sureties for the fidelity of the officers of the company. They are liable only for the losses of its funds attributable to their negligence. (*Briggs* v. *Spaulding*, 141 U. S. 132; *Arthur* v. *Griswold*, 55 N. Y. 400.) There was a period in the short time within which the mischief was done that the defendants were not required to suspect those persons of peculating purposes. And the treasurer retained their confidence longer than the other two.

The learned referee found many facts, and then added substantially, that by reason of those facts the shares of the company were

rendered worthless, and by reason thereof and of the debts and liabilities negligently incurred by the directors, the plaintiff has sustained damages to the amount paid in by him, with interest, and the proportion for which he may be personally liable of the debts and liabilities so incurred, and that the other shareholders of the company similarly situated have respectively sustained like damages, and judgment was directed accordingly. Six others came in and took the benefit of the direction, and with the plaintiff also recovered.

The specific facts found did not necessarily require the direction of the judgment recovered against the defendants, nor was the recovery had warranted by the evidence. The reason urged by the plaintiff's counsel for the suggestion that the determination is not reviewable, is deemed not well founded. (Code Civ. Proc. §§ 1301, 1316.)

The final and interlocutory judgments should be reversed and a new trial granted, costs to abide the final award of costs.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Final and interlocutory judgments appealed from reversed and new trial granted, costs to abide the final award of costs.