ROBERT HOLMES, Individually and as Trustee, and Others, Appellants, *v.* CLINTON H. CRANE and Others, Respondents, Impleaded with FRANCES V. H. PARSONS, as Sole Executrix, etc., of ROSCOE R. S. PARSONS, Deceased, Defendant.

First Department, May 14, 1920.

Corporations — action by minority stockholders against directors — when directors not liable for ultra vires acts of corporation — investment of money of corporation in trust company — ultra vires acts prior to time defendants became directors — evidence not establishing liability — errors of judgment by directors — acts of directors involving judgment and expediency — when directors not liable to account.

In an action by the minority stockholders of a domestic corporation, brought in the right of the corporation against certain directors and the executor of a deceased director for an accounting of property of the corporation used·*ultra vires* through their alleged neglect and failure to perform their duties as directors and through alleged violations of law by them, it appeared among other things that the defendant directors constituted a minority of the board and that some of the alleged *ultra vires* acts took place prior to the time they became directors and consisted in the investment of the property of the corporation in a bank and trust company, which act was ratified by the board of directors and by the stockholders at the time. They were further charged with liability for taking part in the subsequent resolution of the directors authorizing the voluntary liquidation of the affairs of the trust company and in failing to realize on such dissolution the full interests of their corporation. Evidence examined, and *held*, that a judgment dismissing the complaint on the merits should be affirmed.

Even though the acts of the company in acquiring the stock of the bank were *ultra vires*, the defendants on no theory could be held liable where the

purchase of the stock was made before they became connected with the corporation and there is no evidence that any of them in any manner approved or ratified the purchase or took any steps with respect thereto that a prudent officer or director should not have taken, or omitted to take any action which a prudent officer or director should have taken with respect thereto.

While directors may be under a direct liability to stockholders for the depreciation of the value of their stock through *ultra vires* acts when the stockholders have not assented thereto even when they would not be liable to the corporation itself, a director nevertheless is only liable to a corporation or its stockholders for his own acts or omissions and to render him liable for *ultra vires* acts of the corporation it must be shown and found that he voted therefor, participated therein, connived thereat, or negligently omitted to perform his duty.

Moreover, a director is not liable for losses caused by a mere error of judgment when he acted without corrupt motive and in good faith.

A stockholder cannot resort to equity when with full knowledge of the material facts he has assented, although under protest, to *ultra vires* acts and has accepted the benefit thereof.

Regardless of who incorporated the trust company, the acts of the company in using it as a bank of deposit would not be *ultra vires*.

Even though the plaintiffs suing as stockholders may be entitled to a finding that they did not acquiesce and ratify the voluntary dissolution of the trust company in which the funds of the corporation had been invested without authority of law, nevertheless they are not entitled to a judgment reversing a dismissal of their complaint against said directors upon the ground that they should have obtained for the corporation a larger amount of money on said liquidation, where it appears that the directors acted in good faith and for what they deemed the best interests of the company and were not guilty of negligence.

As the act of the corporation in acquiring the stock in the trust company was *ultra vires*, it was not *ultra vires* to undo it by bringing about the liquidation and dissolution of the trust company.

Where the defendants, as a matter of judgment and expediency and acting in good faith on the advice of counsel, authorized a voluntary dissolution of the trust company instead of a dissolution according to the statutory law of a foreign State where it was incorporated, they should not be held liable for not pursuing the statutory method.

PAGE, J., dissents.

APPEAL by the plaintiffs, Robert Holmes and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 22d day of November, 1918, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the amended complaint on the merits.

*Samuel F. Moran* of counsel [*Louis B. Grant* with him on the brief; *Ingraham, Sheehan & Moran,* attorneys], for the appellants.

*Matthew C. Fleming* of counsel [*Dexter, Osborn & Fleming,* attorneys], for the respondents Clinton H. Crane and St. Joseph Lead Company.

*George Edwin Joseph* of counsel [*Henry C. Quinby* with him on the brief], for the respondent Hugh N. Camp, Jr.

*David T. Davis,* for the respondents Emily Lefferts Jones and others, as executors, etc.

LAUGHLIN, J.:

This is an action by minority stockholders of the St. Joseph Lead Company, which will be referred to as the company, a domestic corporation, in the right of the corporation, against Clinton H. Crane and Hugh N. Camp, two of its directors, and the executors of Dwight A. Jones, a deceased director, for an accounting for property and funds of the corporation used *ultra vires* through their alleged neglect and failure to perform their duties as directors and through alleged violations of law by them as officers and directors of the company. The number of directors prescribed in the certificate of incorporation was seven and it is stated in the points that at all the times in question there were eleven directors. Therefore, these three directors, who for brevity will be referred to as the defendants when all are meant, at no time constituted a majority of the board. A demurrer to the original complaint for insufficiency was sustained at Special Term on the ground, among others, that in so far as the complaint was predicated on *ultra vires* acts, it was not alleged that the directors sought to be charged with responsibility therefor participated therein, and his opinion is reported in the New York *Law Journal* of January 3, 1916. An amended complaint was then served and a like demurrer thereto was overruled at Special Term and the order was affirmed by this court (176 App. Div. 914).

The amended complaint sufficiently charged the defendants with responsibility for the alleged *ultra vires* acts of the corporation. It was therein alleged that the *ultra vires* acts were brought about through fraud and conspiracy on the part of

the defendants as well as by their acts as directors and officers and their omission to perform their duties as such. The learned trial court found that certain acts of the board of directors involving the appropriation of property and funds of the corporation were *ultra vires* the corporation but failed to find that the defendants were responsible therefor or entered into a conspiracy or were actuated by fraudulent motives as charged; and found affirmatively that the defendants did not dominate or control the corporation or its board of directors and did not cause the *ultra vires* acts and acted in all respects in good faith and in what they believed to be for the best interests of the company and derived no private or secret advantage from any of the acts complained of; that the company sustained no damages thereby and that the plaintiffs acquiesced in and ratified the *ultra vires* acts.

The only findings made by the trial court which are challenged by the appellants are those relating to the acquiescence by the plaintiffs in and their ratification of the *ultra vires* acts and they ask that those findings be reversed and that an interlocutory judgment be entered on the decision as thus modified, requiring respondents to account for the property and funds of the company thus misappropriated *ultra vires* by the board of directors.

The material facts found by the trial court with respect to the *ultra vires* acts of the company may be summarized as follows: That prior to the time any of the defendants became directors or officers of the company, there had been incorporated in the year 1890, under the laws of Missouri, the Farmers' and Miners' Bank with a capital of $12,000, consisting of 120 shares of the par value of $100 each, at Bonne Terre, Mo., which was a small mining town, and this was the only bank there then and was used by the company for the deposit of funds for the payment of its employees and by its employees as a bank of deposit; that in 1899 the bank became involved in financial difficulties and the company, through its officers, purchased 100 shares of its capital stock and paid therefor $25,985.10 in order that it and its employees might continue to have the benefit of such a bank and such purchase was ratified by the board of directors and by the stockholders on the 17th of May, 1900; that the decedent Jones became a

director of the company May 17, 1900, and president November 1, 1904, and so continued until his death on December 7, 1913, and Camp became a director and the treasurer of the company in January, 1904, and has ever since so remained; that said stock was held by the company when Camp and Jones became directors thereof but the defendant Crane did not become a director of the company until the 23d of November, 1911, and he became the assistant treasurer on October 1, 1912, and became president on the 10th of December, 1913, and he did not become aware of the purchase of the said bank stock until 1912; that the bank for a time became prosperous and paid large dividends to the benefit and advantage of the company which sustained no loss by such investment in the stock of the bank; that while Camp and Jones were directors and officers of the company and on the 26th of December, 1906, the company, without any participation therein by either of them, procured to be organized under the laws of Missouri, the Farmers' and Miners' Trust Company, with a capital of 1,000 shares of par value of $100 each and the company subscribed for 825⅓ shares thereof, which it paid for at par and took and held in the name of one Parsons, who some years later became a director of the compny and whose executors were named as defendants, but never served, and who became president of the trust company and the company paid for eight additional shares of stock in the trust company issued to individuals to qualify them as directors thereof; that the trust company took over and continued the business of said bank and the company was fully reimbursed for the money paid by it for capital stock in the trust company from the sale of its bank stock to the trust company; that the company ratified and confirmed this exchange; that neither Camp nor Jones participated in the purchase by the company of any of the shares of the capital stock of the trust company and did not become aware thereof until some time in the year 1912, and that Crane neither participated therein nor knew of the ownership by the company of the trust company stock until 1912; that such acquisition and holding by the company of stock in the trust company resulted in no loss to the company; that the board of directors of the company deemed it for its best interests to deposit the funds of the company with said trust company and

that the company carried large balances with said trust company, and at times upwards of $1,000,000, from the 28th of December, 1906, until the 15th of August, 1913, and received two per cent per annum on its monthly balance; that the defendant Crane had no personal connection with such deposits and that the depositories of the funds of the company were designated by a vote of the directors before he became a director and that the company suffered no loss by reason of such deposits or through its continued holding of the stock of the trust company; that the Doe Run Lead Company, a Missouri corporation, owned lead mines adjacent to the property of the company in Missouri, and on the 16th of September, 1908, was indebted to the trust company more than $300,000 and on said day delivered to the trust company 3,000 shares of its capital stock of the par value of $300,000, and the trust company gave it credit on the indebtedness therefor and the stock was carried for the trust company in the names of Jones and Camp, who were president and treasurer, respectively, of the Doe Run Lead Company, as trustees; that none of the defendants participated in the acquiring of this stock by the trust company nor was any of them at any time an officer or director of the trust company and it was acquired in good faith and was authorized by the laws of Missouri and was accepted at not more than its intrinsic value and its acquisition resulted in no loss to the trust company; that on the 16th of February, 1912, the Doe Run Lead Company sold to the trust company 19,360 shares of the capital stock of the St. Joseph Lead Company, then owned by it, for $193,600 and it likewise took and carried that stock in the names of Jones and Camp as trustees and that none of the defendants participated in the acquisition thereof and it was acquired in good faith and lawfully and at not more than its intrinsic value and resulted in no loss to the company; that negotiations were instituted in December, 1912, for a consolidation of the company and the Doe Run Lead Company and a reputable, experienced mining engineer appraised the value of the properties of the respective companies for a joint committee of the companies having the matter in charge and estimated the property of the company to be worth $13,500,000, and of the Doe Run Lead Company to be worth $6,750,000 and the consolidation was effected by the

First Department, May, 1920. [Vol. 191.

exchange of stock of the Doe Run Lead Company for stock of the company on the basis of said valuations which were on the basis of par for the Doe Run Company stock and $13 per share for the company's stock and a cash payment was made to the Doe Run Company stockholders for a balance; that by January, 1914, the company had acquired about ninety-two per cent of the Doe Run Company stock, and later on about ninety-eight per cent, and said Doe Run Company was duly dissolved on or about the 12th day of June, 1917, and its remaining property and assets were purchased by the company at a valuation of $168 per share for the remaining two per cent of the stock; that the stockholders of the company, including the plaintiffs, approved the recommendation of the joint committee of the company for the consolidation thereof. These are the material facts relating to all the acts of which complaint is made, excepting those relating to the dissolution of the trust company. The court held that the acts of the company in acquiring stock in the bank were *ultra vires.* On no theory could the defendants be liable for the purchase of the stock which was made before they became connected with the company. There is no evidence or finding that any of them, in any manner, approved or ratified the purchase, or took any steps with respect thereto that a prudent officer or director should not have taken or omitted to take any action which a prudent officer or director should have taken with respect thereto. Directors may be under a direct liability to stockholders for the depreciation of the value of their stock through *ultra vires* acts when the stockholders have not assented thereto even when they would not be liable to the corporation itself (*Holmes* v. *Willard,* 125 N. Y. 75; *Vought* v. *Eastern Building & Loan Association,* 172 id. 508; *Eastern Building & Loan Association* v. *Williamson,* 189 U. S. 122), but a director is only liable to a corporation or its stockholders for his own acts or omissions and to render him liable for *ultra vires* acts of the corporation it must be shown and found that he voted therefor, participated therein, connived thereat, or negligently omitted to perform his duty (*Matter of Lands Allotment Company,* L. R. [1894] 1 Ch. 616; *Kavanaugh* v. *Commonwealth Trust Co.,* 223 N. Y. 103, 116; *Kavanaugh* v. *Gould,* 147 App. Div. 281; *Holmes* v. *Saint Joseph Lead Co., No. 2,* 168 id. 688; affd.,

217 N. Y. 619; *Bloom* v. *National United Benefit Savings Co.*, 81 Hun, 120; affd., 152 N. Y. 114; *Cassidy* v. *Uhlmann*, 170 id. 505; *People* v. *Equitable Life Assurance Society*, 124 App. Div. 714, 731; *Childs* v. *White*, 158 id. 1; *Briggs* v. *Spaulding*, 141 U. S. 132; Thomp. Corp. [2d ed.] §§ 1273–1275), and aside from acts which are *ultra vires* and for which their liability is as above stated they are not liable for losses caused by a mere error of judgment when they act without corrupt motive and in good faith. (Thompson, *supra*, §§ 1265, 1271; *People* v. *Equitable Life Assurance Society, supra.*) But a stockholder cannot have redress in equity when with full knowledge of the material facts he has assented, although under protest, to *ultra vires* acts and has accepted the benefit thereof. (*Wormser* v. *Met. St. R. Co.*, 184 N. Y. 83.) The findings, which are in accord with the evidence, under the authorities cited, exonerate the defendants from any liability on account of the organization of the trust company, or the purchase or holding of its stock or using it as a bank of deposit. Regardless of who incorporated it, the acts of the company in using it as a bank of deposit would not be *ultra vires.*

There remains only the question with respect to liability arising out of the dissolution of the trust company. The court further found that the defendants were present and took part in the adoption of a resolution by the board of directors of the company held on the 20th of March, 1913, authorizing Jones and said Parsons, who was a director, to vote the company's trust company stock for the voluntary liquidation of the trust company and giving them full authority to take any other necessary action; that the trust company never failed and it was neither " insolvent nor threatened with insolvency, nor embarrassed " in the years 1912–1913, but on the 14th of July, 1913, all its stockholders authorized its liquidation and the distribution of its assets *pro rata* among its stockholders and assigned their stock to Edward A. Rozier and M. P. Cayce to immediately liquidate the trust company and to receive from the St. Joseph Lead Company, its depositor, the funds necessary for that purpose and permitted the St. Joseph Lead Company to participate in the distribution of the assets, provided that it advanced the money for the liquidation of the trust company, and consented thereto and authorized the

use of its funds on deposit with the trust company for that purpose, which, through Jones and Parsons, it did; that prior to October 1, 1913, the depositors of the trust company, whose deposits aggregated $516,000, received their share of the assets, and deposits aggregating approximately $123,000 were assigned to the company upon its delivering to the representatives of the trust company its promissory notes therefor, which it has since paid; that the remainder of the depositors of the trust company were paid in cash by moneys advanced by the company; that on or about the 1st of October, 1913, the company and the trust company, and its stockholders, and said Rozier and Cayce, to whom the funds of the trust company had been or were to be conveyed for distribution, entered into an agreement by which $14,877.70 of the cash funds of the trust company were to be set apart and held for the payment of that amount which was the balance owing to its creditors and reciting that the company had advanced to the trust company for the purposes of the liquidation $444,379.27, and that the trust company still had assets of the face value of $754,158.57 and by which it was further agreed that the company should participate in the assets to the extent of sixty per cent thereof and that the stockholders of the trust company should share therein to the extent of forty per cent, and the remaining assets were assigned to said two individuals as trustees to reduce the part thereof consisting of notes to cash and to hold the balance after the payment to the stockholders of the trust company for the benefit of the company. The court also found that at the time of the liquidation, F. P. and J. B. Graves were indebted to the trust company on promissory notes aggregating $113,500, secured by 800 shares of the Doe Run Lead Company stock, 2,500 shares of the St. Joseph Company stock and 7,317 shares of the North Arkansas Mining and Investment Company stock, and being unable to pay, had offered to said liquidators Rozier and Cayce to surrender the collateral in payment and the offer was accepted by the board of directors of the St. Joseph Lead Company, participated in by the defendants, and the collateral was accepted in full satisfaction of the indebtedness and the notes surrendered; that by the liquidation the trust company stockholders, other than the company, who owned 166⅔ shares of

its capital stock of the par value of $16,666.66, received notes of solvent makers, held by the trust company of the par value of $48,660; that said liquidating trustees with the consent of the company exchanged 3,818 shares of the Doe Run Company stock, which they had received from the trust company and held for 29,033 shares of the stock of the St. Joseph Lead Company, with the result that on March 1, 1914, they held 50,893 shares of the St. Joseph Lead Company stock, which they delivered to it on March 2, 1914; that in the course of the liquidation, they made cash payments to the company from the funds of the trust company aggregating $87,951.61; that at a meeting of the board of directors of the company on September 8, 1915, the liquidating trustees submitted a report of their accounts which was accepted and approved; that the report showed that the company had been charged $601,628.05 for the 50,893 shares of its capital stock received from the liquidating trustees, or nearly $13 per share, although at that time its stock was selling in the open market at prices ranging from $6⅞ to $7¼ per share and the market value thereof was not in excess of $368,974.25; that in arriving at the amount the company was charged for the stock so received in exchange for the Doe Run stock, its shares were computed at the par value of the stock of the Doe Run company's stock so exchanged, excepting those taken on the settlement of the Graves loan, which were computed at the face amount of the Graves indebtedness and the other shares were computed at par; that the trust company was duly dissolved by a decree of the Circuit Court of Missouri on the 27th of May, 1914; and that the various steps in the liquidation of the trust company were taken in good faith and under the advice of counsel and with the approval of the Bank Commissioner of Missouri; that the settlement of the indebtedness of the trust company to the company, as stated, was made in the honest exercise of the judgment of the directors of the company and for its best interest and resulted in no loss to the company; that Crane had examined the report of the mining engineer and believed that the stock of the company was intrinsically worth at least $13 a share and that the stock of the Doe Run Company was worth at least $100 a share and that he took no part in the proceedings for the dissolution of the trust company

and had no connection with the selection of the liquidating trustees or in assigning the trust company's assets to them; that Jones merely carried out the instructions of the board of directors of the company given without his control and that there was no improper manipulation of the property of the trust company by him; that none of the defendants were ever stockholders, directors or officers of the trust company or of its predecessor bank or borrowed money from either of them or derived any profit or advantage therefrom or from the company's ownership of the stock thereof, nor were any of them under any duty or obligation to examine into any loans of the trust company or to interfere with the management of its business, nor did any of them receive any of the property or assets of any of the companies for his own benefit; and in all their transactions they acted honestly and uprightly and in the exercise of a reasonable business judgment in behalf of the company, of which they were directors and officers, and that neither of them controlled the affairs of the company or of the trust company at any of the times in question; that the liquidation and dissolution of the trust company were in good faith and not for the protection of any of the defendants and not to prevent the stockholders of the company from interfering to protect its rights and not to cover up any defalcation or misappropriation of money or property of the company from the knowledge of its stockholders or others interested, and that they fully performed their duties to the company and acted in good faith and without corrupt intent and were guilty of no negligence, fraud, conspiracy or other misconduct; that no fictitious valuation was corruptly or negligently placed upon the assets of the trust company in the liquidation or dissolution of it; that the minority stockholders of the trust company received through the liquidation more than they were entitled to receive on a fair valuation of its assets and that the market value of the collateral received on the settlement of the Graves loans was not in excess of $57,500; that at the time of the settlement with the Graves the Doe Run stock was selling in the open market at $50 per share and the stock of the company at $6.75 and $7 per share and that the stock of the North Arkansas Mining and Investment Company was worthless; that the intrinsic value of the company's stock

in 1913 was at least $13 per share and that of the Doe Run Company $100 per share; that the stock and assets of the trust company transferred to the St. Joseph Company upon the liquidation were sufficient to pay in full all the claims of the St. Joseph Company against the trust company; that before the consolidation neither the stock of the Doe Run nor the company was listed on any exchange and during the period in question there never was any active market or considerable dealing in either stock, and the stock was sold and bought usually in small lots; that in June, 1915, the company's stock was listed on the New York Curb and that prior thereto it sold in 1912 at from $8 to $9⅛ per share, in 1913 at from $6 to $8 per share, in 1914 from $3⅞ to $7¼, and the lowest in 1915 was $5½; that the Doe Run stock sold in 1912 at from $69¾ to $82½, in 1913 from $50 to $71, and in 1915 at $125; that at the time of the commencement of the action on October 20, 1915, the company stock was selling at from $12⁷/₁₆ per share to $14³/₁₆, and on March 16, 1916, the date of the amended complaint, at $17 per share; that since January 1, 1917, the company has paid to its stockholders amortization dividends, representing a return of capital, amounting to thirty per cent and regular dividends amounting to forty-eight and one-half per cent; that the market value of the company stock at the time of the trial was between $15.50 and $16 per share and the 50,893 shares taken in settlement and discharge of the indebtedness of the trust company was then of the value of about $800,000 and the dividends paid thereon from January 1, 1914, aggregate $374,063, leaving a large profit to the company as the result of said transaction; that at no time has the company sustained any loss by reason of its ownership of the trust company stock, the liquidation of the trust company or matters connected therewith, and that prior to the commencement of the action and on or about the 7th of July, 1915, plaintiffs duly demanded that the company institute this action but it refused so to do. The court found as conclusions of law that the organization of the trust company by the St. Joseph Lead Company was *ultra vires* as was also its acquisition and holding of the stock of the trust company; that the acquisition in 1908 of the 3,000 shares of Doe Run stock by the trust company was not *ultra vires* nor was its action in

acquiring the St. Joseph Company stock in February, 1912, from the Doe Run Company; that the company's participation in the plan of liquidation and dissolution of the trust company did not make it a partner in the enterprise or constitute the doing of banking business and was not *ultra vires;* that the decree of the court dissolving the trust company is conclusive as to the regularity and propriety of the dissolution proceedings and is not subject to collateral attack; that the amended complaint should be dismissed on the merits as against the defendants Crane, Camp and the executors of Jones and each of them, on the ground that the acts complained of involved the exercise of an honest business discretion and judgment on their part and were in good faith, and on the further ground that neither of them was guilty of any conspiracy, concealment or negligence and that neither of them derived any personal benefit or profit from any of the acts of which complaint is made, and on the further ground that the evidence shows conclusively that neither at the time of the commencement of the action or the time of the trial or at the present time did the St. Joseph Lead Company sustain any loss by reason of the acts complained of and that it has realized large profits therefrom; that the plaintiffs have not established the right or cause of action set up in their amended complaint and are not entitled to an accounting or to the other relief prayed for, and judgment in favor of Crane, Camp and the executors of Jones is directed, dismissing the complaint, with costs to each and with an extra allowance of $2,000 to be equally divided among them.

The finding that the plaintiffs acquiesced in and ratified the acts of which they complain is not sustained by the evidence. The evidence on that subject does not purport to relate to acquiescence or ratification by all of the plaintiffs but only by the decedent Holmes and the plaintiff Belle R. Holmes and it consists of their having been represented by proxy at a stockholders' meeting of the company prior to the organizing of the trust company at which a report of the treasurer was presented, showing that the company was carrying the bank stock, but if that knowledge could be imputed to them through their proxy, it did not show how the stock had been acquired, and for aught that appeared it might have been lawfully acquired in payment of a debt. However, no accounting is

sought with respect to the company having acquired the bank stock and if all the plaintiffs knew was that the company had the bank stock before the trust company was organized, that did not estop them from questioning the *ultra vires* acts of the officers and the board of directors in organizing the trust company and their subsequent relations with it, including the settlement on the liquidation thereof, which are the matters concerning which the plaintiffs demand an accounting.

Appellants acquiesce in all the findings with the exception of those relating to their acquiescence and ratification, and those they ask to have reversed. They should be reversed if that would be of any avail to the plaintiffs, but I think it would not. They, however, insist that they are entitled to an accounting by the defendant Camp and the executors of Jones for the organizing of the trust company and the moneys deposited with it, and by Crane, after he became director, and by all of them with respect to the settlement on the dissolution of the trust company by which the St. Joseph Lead Company received less than its share of the assets of the trust company and they claim that the stock of the St. Joseph Lead Company taken on the settlement should be retained as an asset of the company but that the defendants should be credited with only its market value at the time, which would leave a larger balance owing to the company on its entire business relation with the trust company. The findings of the trial court, however, which the appellants accept, show, as has been seen, that none of the defendants participated in the organization of the trust company and do not show that they controlled or could have prevented the deposits of money that were made with the trust company. There is no possible theory of liability of any of the defendants except in failing to secure for the company its full proportionate share on the liquidation of the trust company and with respect to that the court has held that they acted in good faith and for what they deemed to be the best interests of the company and were not even guilty of negligence. The act of the company in acquiring the stock in the trust company being *ultra vires* it could not be *ultra vires* to undo it by bringing about the liquidation and dissolution of the trust company. Thus it is not shown that any

of the defendants are responsible for any of the *ultra vires* acts, and, therefore, their liability is to be decided by applying the test of honesty and good faith and reasonable care. Appellants concede the propriety of the dissolution of the trust company. They complain that it was not dissolved according to the law of Missouri but that there was a voluntary dissolution, the full terms of which were not presented to the court, and that the action of the court was merely a confirmation of the dissolution that had already taken place. I think that we should not hold the defendants liable for not pursuing the statutory method of dissolving the corporation from the outset. That was a matter of judgment and expediency and they acted in good faith and on the advice of counsel. The appellants are technically right in contending that it has not been shown by competent evidence that the shares of the company's stock which it received on the settlement were worth the amount at which they were estimated. With respect to their value there is merely the evidence of isolated sales, not on any market, and the fact that they sold much higher a year or so later when they were listed on the curb. In these circumstances it cannot be said that the board of directors of the company were bound as to value by the irregular sales. It appears that they were of the opinion that the stock was worth the amount their company was charged therefor on the settlement and the court so found. There is no evidence, and not even a claim now, of bad faith against these defendants. They may not have made as good a settlement for their company as these facts indicate they should have made, but they neither had nor served any other interest, and they applied their best judgment honestly and I think we would not be warranted in calling them to account.

It follows that the judgment should be affirmed, with costs.

CLARKE, P. J., SMITH and MERRELL, JJ., concur; PAGE, J., dissents.

Judgment affirmed, with costs.