Coplay ·Cement Manufacturing Company, Plaintiff, *v.* Ferdinand L. Loeb and Others, Defendants.

Supreme Court, New York Special Term, January 15, 1925.

Corporations — misconduct of officers and directors in active charge of corporation — action to compel officers and directors to account for amount received as bonus under resolution authorizing payment on basis of profits earned — defendants offered no proof — plaintiff established prima facie case by showing profits justifying payment of bonuses were based on exaggerated valuation of assets — corporate books binding on defendants as admission against interest — not necessary to call clerks who made actual entries in books, which entries were not disputed — not necessary to prove fraudulent motive.

In an action by a corporation against defendants, who were formerly directors and officers of the corporation and in active charge of its affairs, for an accounting in relation to alleged bonuses paid to them under a resolution authorizing the payment of bonuses in addition to regular salaries on each $20,000 net earnings of the company after deducting $100,000 for depreciation and for six per cent dividends on preferred stock, in which it appears that the action was predicated, not on the validity of the resolution, but on the fact that the bonuses were paid on paper profits and not on actual profits, which condition was brought about by an overvaluation of assets, the defendants failed to interpose any proof, and the plaintiff sustained its burden of establishing a *prima facie* case by proof that the assets of the corporation were overvalued by the defendants, thereby creating a fictitious profit, and that if the financial condition of the company had been stated as it actually existed, profits would not have been shown authorizing the payment of bonuses under the resolution.

The books of the company, which were kept under the direction of the defendants, who were in active charge and control of the affairs of the corporation, were admissible in evidence as an admission against the interests of the defendants, for the purpose of establishing the value placed on the assets by them, on which valuation they claimed sufficient profits had been earned to entitle them to bonuses.

It was not necessary to call the clerks who took the inventories and prepared the data used in making the entries in the books, since there was no dispute as to the accuracy of the entries, and since the books were offered in evidence merely for the purpose of establishing the fact that the defendants had overvalued the assets of the corporation, and for the purpose of laying the ground work for testimony as to the exaggerated values and the resultant fraud upon the company.

It was not necessary for the plaintiff to establish any fraudulent motive on the part of the defendants in receiving the bonuses, for, if they received the money under circumstances not authorizing its payment under the resolution in question, they are obliged to return it to the corporation regardless of their motive.

Action to compel the defendants to account for their acts and conduct as directors and officers of the plaintiff.

*Lee H. Burton* [*Ira Skutch* of counsel], for the plaintiff.

*Chadbourne, Stanchfield & Levy* [*Harold A. Callan* of counsel], for the defendants.

GLENNON, J.:

The plaintiff, a corporation, seeks in this action to compel the defendants to account for their acts and conduct as directors and officers of the plaintiff in that, while in control of the affairs of the corporation, they were credited with and received certain sums of money as bonus payments, to which they were not entitled. Under the terms of a resolution adopted by the board of directors in the year 1917, and in substance readopted each year thereafter, up to and including the year 1920, the president, first vice-president, and second vice-president of the company were entitled to receive in addition to their salaries a bonus " of $666.66 on each $20,000 net earnings of the company, after deducting the sum of $100,000 for depreciation and for 6 per cent dividend on the preferred stock." During that time the defendant Ferdinand Loeb was president of the company, the defendant Emil Loeb was vice-president, and the defendant David Frank up until June, 1919, was assistant to the president and then became second vice-president and general manager. The validity of these resolutions authorizing the payment of bonuses is not attacked by the plaintiff, although the defendants were members of the board of directors at the time the resolutions were adopted.

The claim is made, however, that the alleged profits had really no foundation in fact; that, while there may have been book earnings, the depreciation in the value of certain stocks on hand was not properly written off, and consequently there was no honest basis for the payment of the so-called bonuses. The plaintiff introduced in evidence records of the company, including inventories, which were taken during the time that the defendants were officers. It was shown by the testimony of an expert accountant, who based his calculations on the records, that there was an overpayment of approximately $10,000 as bonuses for the year 1917. Reference was made specifically to the overvaluation of coal on hand, of bags used in delivering cement, and of a plant for the manufacture and sale of potash. Evidence was submitted as to the market value of coal at the time one of the inventories was taken, from which it appeared that there had been an overvaluation of more than $50,000 in this one item. Evidence was also submitted as to the market value of bags, which showed a gross overvaluation. In the year 1918 bags in the hands of customers of the value of more than $150,000 were credited as assets of the company, when in fact

41

they had been fully paid for by said customers, who were entitled to a refund of the amount paid therefor on the return of the bags to the company. It was shown that the sum of nearly $200,000, expended for the potash plant, had been credited as an asset, when in point of fact it should have been charged off, at least in part, as a loss. It was apparent that the values of these assets were greatly exaggerated. Had the inventory reflected the true value of the coal, the bags, and the potash plant, then the so-called earnings of the company would have been greatly diminished, and the defendants' share of the profits would have been many thousands of dollars less than they actually received. The defendants offered no testimony. Their contention was that the plaintiff failed to make out a *prima facie* case by competent proofs. I will take up each of the points relied upon by the defendants.

The point was raised that the books of the company were not binding on the defendants. The authority to which the attention of the court was called is *Rudd* v. *Robinson* (126 N. Y. 113). I do not believe that any fair-minded person could quarrel with the well-reasoned opinion in that case, written by Judge Earl a great many years ago. If the same situation arose in the first instance to-day our courts would undoubtedly subscribe to the very same doctrine. Robinson was an " inactive " director. He was not charged with the supervision of the books. An entry appeared in the books which indicated that Robinson was indebted to the corporation. Rudd, the receiver, sought to base a recovery of the amount of the alleged indebtedness solely on the books of the company. The court very properly held that the books were not competent evidence for the purpose they were offered. In the case at bar an entirely different situation prevails. The three defendants were not only directors, but also active officers, of the plaintiff company. In order to compute the earnings of the company, it was necessary to call in accountants to go over its books. These very books were used by the defendants for the purpose of computing their share of the profits. The defendants were on the ground at Coplay, Penn., the home office of the company. They had charge of the employees of the company and its everyday affairs. Since the defendants accepted bonuses, which were determined solely from the books of the plaintiff, they impliedly said that the entries contained in the books were correct. They adopted the entries, and consequently the entries became an admission against the interests of the defendants. I am of the opinion, therefore, that the books were properly received in evidence. (*Wesp* v. *Muckle*, 136 App. Div. 241, 243; *Hayden* v. *Williams*, 96 Fed. 279, 282; *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, 83.)

The next point made is that under the authority of *Mayor, etc., of New York* v. *Second Avenue R. R. Co.* (102 N. Y. 572) it was necessary to call the clerks who took the inventories and prepared the data used in making the entries. Plaintiff did not dispute the amount of goods on hand. It did not attempt to prove the exact number of tons of coal owned by the plaintiff or the number of bags it possessed. Its position was that it was willing to accept the admissions made by the defendants as to the stock on hand. It simply sought to show that the values set forth in the books and records of the company were fictitious and greatly exaggerated. If the books had been offered for the purpose of proving the stock on hand, or if the defendants by their own acts had not admitted the correctness of the entries, the authority referred to would undoubtedly have been controlling. The proofs, however, were submitted for the purpose of laying the groundwork for the testimony as to exaggerated values and the resultant fraud upon the company.

The last point is really addressed to the sufficiency of the proof introduced to sustain the allegations of the complaint. The complaint in brief charges the defendants with unlawfully conspiring to defraud the company. It alleges that the defendants fraudulently obtained money from the company. It asks that the defendants be compelled to account for the money wrongfully obtained. The case of *Stokes* v. *Stokes* (91 Hun, 605) is cited by the defendants on this point. In the *Stokes* case it was said an accounting will not be ordered where misconduct is alleged, in the absence of proof of some official misconduct and of a determination to that effect. I am of the opinion that there is sufficient evidence in the record to sustain a finding of official misconduct on the part of defendants in their representative capacities as officers. All the plaintiff was required to do was to establish *prima facie* the allegations of the complaint. " The presumption of innocence is not indulged in a civil action, as the plaintiff rests only under the burden of proving his case by a preponderance of evidence." (*Kurz* v. *Doerr*, 180 N. Y. 88, 91.) At page 92 in the same opinion it is said: " We deem it very important that the strict rule of evidence, applicable to the burden of proof in criminal cases, should not be extended to civil actions for the recovery of damages, where the defendant is charged, incidentally, with arson, embezzlement or any other crime."

The plaintiff proved that the value of the stock on hand was greatly exaggerated. After the year 1916, Christ, the secretary and treasurer of the company, was not consulted by the accountants when the company's books were audited. He and the defendant Frank discussed the fact that the coal was not inventoried at its

true value.  He was informed by Frank that that situation would be remedied the following year.  On another occasion he called the attention of the defendants Ferdinand Loeb and Frank to the fact that in computing earnings for the year 1918 the company was credited with moneys which represented the value of bags in the hands of customers and which had been paid for by said customers.  It is true that this particular item was in part credited by the defendants to the company in the following year; still it seems strange that it was necessary to call the attention of the defendants to such an important matter, particularly where the earnings of the company depended on it.  Even a casual inspection by the defendants of the books would have been sufficient for them to determine the value placed on two of the most important matters necessary to carry on the cement business.  They must have known of the market value of coal and bags at the times the inventories were taken.

In face of all this the defendants offered no proof.  " Knowing the truth and omitting to speak, every inference warranted by the evidence should be indulged against them."  (*Wylde* v. *Northern R. R. Co. of New Jersey,* 53 N. Y. 156, 164.  See, also, *New York & Brooklyn Ferry Co.* v. *Moore,* 102 N. Y. 667; 18 Abb. N. C. 106; *Jenner* v. *Shope,* 205 N. Y. 66.)  These defendants were not only directors of the plaintiff, but in addition thereto they were its active officers.  Because of that relation they owed to the plaintiff the duty of good faith and vigilance in the preservation of its property.  (*General Rubber Co.* v. *Benedict,* 215 N. Y. 18.)  " The relation of an officer of a corporation to it is fiduciary, and he must at all times act in good faith and unselfishly toward the corporation." (*Billings* v. *Shaw,* 209 N. Y. 265, 279.)

Assuming, as the uncontradicted proof showed, that the values set forth in the books were inflated, then the defendants must account to the plaintiff for the moneys to which they were not entitled.  In the case of *Bosworth* v. *Allen* (168 N. Y. 157) it was held that the directors of a corporation, while not technically trustees, were liable in equity to account the same as ordinary trustees for their conduct in the management of the corporation. The defendants in this case reaped certain benefits.  Their first duty was to the corporation.  They should have seen to it that special care was exercised in making proper entries in the books. They were officers of the company, and at the same time, under the terms of the resolution above referred to, were sharing as individuals in its profit.  It was not necessary, therefore, to prove a fraudulent motive.  (See *Carr* v. *Nat. Bank & Loan Co.,* 167 N. Y. 375.)  If any one of the defendants had no actual knowledge

of the fraudulent entries, he would be nevertheless liable, since he shared in the fruits of the fraud. In *Krumm* v. *Beach* (96 N. Y. 398, 404) it was said: "The case, therefore, is brought within the rule which makes her receipt and retention of the fruits and product of the fraud involve a liability on account of it, although herself innocent of personal participation in the wrong."

For the reasons stated, plaintiff is entitled to an accounting. Submit proposed findings of fact, conclusions of law, and interlocutory judgment on notice.