ALBERT G. WALKER, as Trustee in Bankruptcy of FREDERICK SOUTHACK & ALWYN BALL, JR., INC., Plaintiff, *v.* ALRICH H. MAN and Others, Defendants.*

Supreme Court, New York County, February 5, 1931.

*Robert P. Levis* [*David L. Podell, Mortimer Hays* and *Julius J. Nirenstein* of counsel], for the plaintiff.

*Davies, Auerbach & Cornell* [*Martin A. Schenck* of counsel], for the defendants Man and others.

*Hawkins, Delafield & Longfellow,* for the defendant Wadham.

*Greene & Hurd* [*Daniel S. Murphy* of counsel], for the defendants John Lowry and John Lowry, Inc.

* See, also, 142 Misc. 288, 293.

COLLINS, J. The defendant Man moves for judgment dismissing the amended complaint on the ground generally that it does not state facts sufficient to constitute a cause of action against him, and specifically moves to dismiss the first, second, third, fourth, seventh, eighth, ninth, tenth and eleventh causes of action on the ground that it appears on the face of each one thereof that it does not state facts sufficient to constitute a cause of action against him.

The litigation is by the trustee in bankruptcy of Frederick Southack & Alwyn Ball, Jr., Inc., and seeks to recover $1,677,411.19 from the defendants, as former directors of the bankrupt corporation, for dereliction of duty and mismanagement in the conduct of the bankrupt's affairs.

The amended complaint asserts eleven causes of action.

The suit is grounded upon section 60 of the General Corporation Law, which, in part, provides: " An action may be brought against one or more of the directors or officers of a corporation to procure judgment for the following relief or any part thereof:

" 1. To compel the defendants to account for their official conduct, including any neglect of or failure to perform their duties, in the management and disposition of the funds and property, committed to their charge.

" 2. To compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or other violation of their duties."

Section 61 of the General Corporation Law authorizes the bringing of an action for the relief prescribed in section 60 by a trustee in bankruptcy of the corporation.

As a prelude, let it be emphasized that we are dealing with allegation, not proof. We are not now fixing liability, but determining whether liability may be predicated upon the challenged allegations.

Many of the cases cited by the moving defendant, which condemn alternative or equivocal allegations, are no patterns for the present case. These directors are charged not only with misfeasance, but with nonfeasance, not only with doing wrongful acts and committing waste, but with acquiescing in and confirming the wrongdoing of others, and with doing nothing to retrieve the waste. As directors, these defendants were not only obligated to do nothing wrongful themselves, but to attempt to prevent wrongdoing by their fellow directors, and, if wrong be committed, to seek to rectify it. Passivity and disavowal of knowledge alone do not constitute a pass to freedom from responsibility. A director may not shut off

liability by shutting off his hearing and sight. It is his duty to know what is transpiring. The company's stockholders and creditors, as well as the public, have a right to rely upon the performance by him of the duties of a director. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185, 193.)

As it is succinctly put in *Kavanaugh* v. *Gould* (147 App. Div. 281, 289), " The law has no place for dummy directors."

True, liability is not to be fastened upon a director for every derleiction of duty of a fellow director.

" They are bound generally to use every effort that a prudent business man would use in supervising his own affairs." (*Kavanaugh* v. *Gould, supra.*)

" A wrong done or a duty omitted must lie at the foundation of his liability." (*Croft* v. *Williams*, 88 N. Y. 384, 389.)

" If at their meetings, or otherwise, information should come to [directors] them of irregularity in the proceedings of the " corporation, " they are bound to take steps to correct those irregularities." (*Kavanaugh* v. *Gould, supra.*)

" They [directors] are liable only for the losses of its funds attributable to their negligence." (*Bloom* v. *National United Benefit Sav. & Loan Co.*, 81 Hun, 120, 127; affd., 152 N. Y. 114.) Negligence, however, may ensue from inaction, as well as action.

With these general principles as a setting, we proceed seriatim to an examination of the various causes of action assailed.

Prefatory to the specific charges, the first cause of action alleges that the bankrupt was a domestic corporation engaged in the business of managing real properties, as agents for owners, in New York city, the leasing and renting of real property, the underwriting and selling of corporate bonds secured by mortgages upon real estate, and other business of a general real estate character; that the bankrupt's by-laws provided for a board of directors consisting of fifteen members, and that the business affairs of the bankrupt were managed by a board of directors consisting of fifteen men, or a lesser number, during the entire period of the carrying on of its business; that the corporation was adjudicated a bankrupt in this Federal district in January, 1928; that, at the time complained of, creditors of the bankrupt were in existence and that the wrongful acts charged were made and done by the " defendants for the purpose of defrauding " the bankrupt's creditors then existing, or subsequent creditors now represented by the plaintiff herein.

The first cause of action then alleges that at the time of the formation of the corporation its authorized capital stock consisted of 10,000 shares of preferred stock of a par value of $100 each, and 15,000 shares of common stock of no par value, and that in con-

nection with the formation of the corporation the board of directors authorized the sale of stock of the corporation to the public generally; that in connection with such sale, the defendant Wheeler was employed by the defendant Alwyn Ball, 3d, under an agreement whereby Wheeler was to receive eighteen per cent of the gross amount of any moneys received by him or the corporation on account of the sale of the corporation's shares of stock. The claim is made that this agreement was not authorized by any resolution of the board of directors and that the defendant Alwyn Ball, 3d, though purporting to act for the corporation, acted without any authority of the corporation or the board; that thereafter the corporation paid to Wheeler $232,000 as commission and for his services in selling $875,210 of the stock; that the board knew · that substantial payments were being made to Wheeler " and knew or ought to have known the approximate amount thereof." The charge is then made that " said directors permitted and acquiesced in the payment to the said Wheeler of the sum of $232,000 without ascertaining or making any check upon the agreements made with Wheeler, or the terms thereof, or the amount of the sales made by him, and without in any way properly, reasonably and fairly performing their duties and obligations as directors of the said corporation; " that said sum of $232,000 paid to Wheeler " was at least $74,000 in excess of any moneys to which Wheeler was entitled " under his agreement with Alwyn Ball, 3d; " and that the said overpayment was made through the negligent acts, omission and wilful default and negligence on the part of the defendants, *and all of them,* of their duties and obligations to the stockholders and creditors of the said corporation, and in fraud thereof, and without effort being made on the part of said directors to recover back said sums, or in any way, shape or form to protect the rights of stockholders and creditors of the corporation and to preserve the assets thereof."

Paragraph 15 of the complaint alleges that " At the time of the acts hereinbefore set forth some of the defendants were directors of the corporation and at the time that other defendants became directors they approved, acquiesced in, confirmed and ratified the said acts of the other defendant directors so performed as aforesaid." This first cause concludes with an allegation of damage in the sum of $74,000.

The moving defendant contends that this first cause does not assert that he was a director during any part of the period in question, and he maintains that the above-quoted allegation in paragraph 15 that those not directors at the time complained of " approved, acquiesced in, confirmed and ratified the said acts of the

other defendant directors so performed as aforesaid," is a conclusion of law, and consequently insufficient as a matter of law.

It has been held, however, that " Ratification is a conclusion of fact and not a conclusion of law." (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113, 131.) Ratification may be implied through acquiescence instead of expressed by positive and distinct action or language. (*Arnot* v. *Union Salt Co.*, 186 N. Y. 501.) It follows that the first cause must be deemed sufficient.

The second cause of action, after realleging the preliminary statements above set forth, avers that in about February, 1925, the bankrupt advanced to one M. H. Avram or M. H. Avram & Co. the sum of $20,000, taking as security therefor the note of M. H. Avram or M. H. Avram & Co. indorsed by one J. D. Lacey; that the loan was not authorized by any meeting of the board of directors and " was not for the benefit of the corporation or in aid of any business or business affairs of the corporation; " that this loan item remained on the bankrupt's books until the bankruptcy as unpaid and appeared as an asset " in various statements issued by said corporation from time to time."

Paragraph 20 of the complaint charges that the directors " knew or ought to have known the existence of said item upon the books of the defendant company, yet took no proceedings of any kind or sort, either individually or at board meeting, or in any other manner, for the collection or enforcement of said alleged loan; and either acquiesced in and ratified and confirmed said conversion of the funds of the corporation, or negligently and wilfully and in violation of their duties and obligations to the creditors and stockholders of the corporation, permitted the item to remain in an open item for several years without any steps or proceedings being taken by them to recover the amount thereof."

The allegation follows that the note was dishonored, and that " no steps or proceedings were taken by the defendants to have said note protested for nonpayment and said note was negligently, carelessly or wilfully and fraudulently permitted to remain unprotested and as a result thereof, the said Lacey, the endorser thereof, who was fully and amply able financially to meet said obligation, was released and discharged from any obligation arising by virtue of his endorsement of said note."

Damage in the sum of $20,000 is claimed.

In challenging the sufficiency of this second cause of action, the moving defendant again urges that there is no allegation that he was a director at the time of the loan, and that it does not appear that at the time he was a director Lacey could have been held by a suit upon the note. Surely, however, if the moving defendant

knew that an improvident and unauthorized loan had been made, and took no steps whatever at salvaging the loan, and acquiesced in and confirmed the original wrongful act, he would be open to the charge of negligence and should account for his conduct.

The illustrations by the moving defendant in support of his contention that the passivity of one group may not be utilized as a basis for a suit, because of the affirmative negligence of another group, are not apt. Our concern here is with the duties and responsibilities of corporate directors. What has been written leads to the holding that the second cause is sufficient.

The third, fourth and fifth causes of action are predicated upon the declaration and payment of dividends in violation of section 58 of the Stock Corporation Law. The third cause alleges that at the time of the declaration of the dividend complained of therein, the defendants Comstock, Fife, Trisman, Allen, Alwyn Ball, Jr., Wadham, Alwyn Ball, 3d, John S. Ball, Russell and Arnold " were present and/or voted; that the other defendants herein did approve, ratify and acquiesce in the said declaration of said dividend and did approve of, participate in and/or receive payment of dividend pursuant to said declaration, and that the said defendants thereafter failed, neglected and refused to take any steps or proceedings or to make any efforts to recover back said sums on behalf of said corporation, or to protect the rights of the corporation and to preserve the assets thereof in that connection."

The fourth cause alleges that at the time of the declaration of the unlawful dividend therein sought to be recovered, the defendants Comstock, Guggenheim, Trisman, Ball, Jr., Ball, 3d, Russell, Fife, Allen, Wadham, John S. Ball and Arnold " were present and/or voted," and the allegation of approval, etc., heretofore set forth, is repeated.

The fifth cause alleges that at the time of the declaration of the unlawful dividend made the basis of that cause, the defendants Comstock, Ball, Jr., this moving defendant Man, Ball, 3d, Trisman, Russell, Fife, Allen, Wadham J. S. Ball and Arnold " were present and/or voted," and the allegation of approval, etc., is reasserted.

The sufficiency of the third, fourth and fifth causes are assailed by the moving defendant (and the defendant Perrine in a separate motion made by him) on two grounds:

First, that section 58 of the Stock Corporation Law fastens joint and several liability for the payment of dividends out of surplus instead of earnings on " the directors in whose administration the same shall have been declared or made, except those who may have caused their dissent therefrom to be entered upon the minutes of the

meetings of directors at the time or who were not present when such action was taken. * * * "

The moving defendant maintains that since it does not affirmatively appear that he was present or voted at the meeting, or did not cause his dissent to be registered, he is excluded from the operation of the section.

Irrespective of section 58 of the Stock Corporation Law, if the moving defendant approved, ratified and acquiesced in the declaration of an unlawful dividend and approved of, participated in and/or received payment of such dividend, and " thereafter failed, neglected and refused to take any steps or proceedings or to make any efforts to recover back said sums on behalf of the corporation, or to protect the rights of the stockholders and creditors of the corporation and to preserve the assets thereof, in that connection," he would be liable. (*Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 127 App. Div. 167; affd., 196 N. Y. 99; *Johnson* v. *Nevins*, 87 Misc. 430; *Brinckerhoff* v. *Bostwick*, 99 N. Y. 185; *Mason* v. *Henry*, 152 id. 529.)

In *City Investing Co.* v. *Gerken* (121 Misc. 763, 764), Mr. Justice PROSKAUER held: " With respect to the dividend, I find as a fact that it was declared and paid out of capital. The defendant Gerken was not at the meeting at which the dividend was voted. If this circumstance stood alone it would free him from liability under the opinion of Mr. Justice CLARKE in *Hutchinson* v. *Curtiss*, 45 Misc. 484. But the complaint alleges and the answer admits that all of the directors were present at a subsequent meeting, ' at which they were advised of the declaration and payment of said dividend, and ratified and approved same.' This, coupled with the other facts alleged, seems to me sufficient to charge Gerken with personal and affirmative participation in the declaration and payment of the dividend."

The second objection to these three causes of action is that there is an absence of allegation that at the time of the declaration of the unlawful dividends there were any judgment creditors of the corporation. Under section 58 of the Stock Corporation Law, however, liability is " to such corporation. * * * " The trustee here represents the corporation. Furthermore, section 60 of the General Corporation Law authorizes the recovery of damages for wasted assets by a trustee in bankruptcy. Manifestly dividends declared in the manner here charged constitute a waste of assets.

The conclusion is that the third, fourth and fifth causes meet the requirements, and that the objections thereto must be overruled.

The seventh cause alleges that, at the time of the incorporation of Southack & Ball, Inc., there were approximately 5,200 units, con-

sisting of one share of common stock and one share of preferred stock of the corporation, held in the treasury; that subsequent thereto and pursuant to certain arrangements, Southack & Ball, Inc., received subscriptions for approximately 6,000 units prior to February 26, 1925; that on or about March 18, 1925, at a meeting of the stockholders of Southack & Ball, Inc., the capital stock was authorized to be increased, making available for sale an additional 10,000 shares of preferred and 5,000 shares of common stock; that on February 16, 1925, an alleged meeting of the board of directors of Southack & Ball, Inc., was held, at which were present Alwyn Ball, Jr., Alwyn Ball, 3d, Trisman, Russell, John S. Ball and Fife; that at the time of such meeting there were eleven directors of the corporation, making six a quorum; that " the virtual management and control of said meeting was exercised by the said defendants Ball who represented three members of said board; that the remaining three members of said board present at said time were in the employ of said corporation and subservient to the wishes of the said defendants Ball; " that at that meeting it was voted by the directors then present that the corporation, in order to meet the alleged oversubscription of units of its stock, should purchase from the defendants Ball 800 units of the stock of the company for the sum of $80,000; that pursuant to such action of the board, the corporation, on or about February 28, 1925, did purchase from the said Balls 800 units and paid therefor the sum of $80,000. The allegation is then made that the defendants Ball were disqualified by virtue of their personal interest in the transaction from voting or participating therein; that as a consequence thereof there was no quorum of the board, and that the resolution authorizing the purchase was invalid and nullified the purchase; that at the time, and thereafter, sufficient unissued units of stock were available to meet any paid subscription and that the purchase of the 800 additional units was unnecessary; "and that the defendants herein knew and were well advised or ought to have known of said facts at the time of the payment of said sum of $80,000 to the said defendants Ball."

It is charged that the directors present at the February 16, 1925, meeting exercised full control of the management of the corporation and that it was then within the board's discretion and control to increase the capital stock to meet any existing or prospective requirements for the filling of subscriptions; that $80,000 was diverted from the treasury of the corporation to the defendants Ball, and should have been received by the corporation; that the diversion was in violation of the obligations of the directors to the stockholders and creditors and in fraud of the corporation and creditors; that such diversion constituted a violation of subdivision 5

of section 664 of the Penal Law, and section 58 of the Stock Corporation Law; that the defendants not present at the meeting were elected and became directors at the time of the increase, or shortly thereafter, and that they were advised and knew, or ought to have known, of the wrongful conduct of February 16, 1925, and the payments subsequently made to the defendants Ball; and that " the other defendants herein did acquiesce, approve, confirm and ratify the conduct of the said directors and the said defendants Ball and negligently failed and omitted to do anything or take any steps for the return of said moneys to the corporation or for the protection of the rights of said corporation, its stockholders or creditors, actual or prospective," to the damage of the plaintiff, representing the corporation, in the sum of $80,000.

The moving defendant indicates that this seventh cause of action affirmatively shows that he was not present at the meeting of February 16, 1925, and that the allegation that certain named directors other than the moving defendant then owned all of the stock of the corporation and controlled the meeting excludes the moving defendant from liability. However, what has been said hereinabove as to knowledge, acquiescence and ratification applies with equal force here. Accordingly, this seventh cause is held adequate.

The eighth cause repeats all of the allegations contained in the preceding seven causes, and charges that " as a result of the negligent, wasteful and fraudulent management and conduct of the business and affairs of the corporation * * * and as a result of the inattention to the conduct of the affairs of the corporation upon the part of the defendants or some of them, and their gross neglect of their duties as directors of the corporation, substantial losses were incurred upon the part of the said corporation, so that in the early part of 1926 the corporation was unable to carry on its affairs and meet its current obligations with the assets then available;" that about that time the corporation had unlawfully converted funds which came into its possession as a fiduciary, and that in July, 1926, the amount so wrongfully converted was approximately $70,000, which shortage became the subject of discussion by the board on July 14, 1926, when a ways and means committee was appointed, consisting of the defendants Comstock, Man (the moving defendant), Rich, Wadham, Allen and Perrine; that the defendants failed, neglected and refused to take proceedings to compel the defendants who had caused the wrongful diversion to make restitution, but, instead, " approved, ratified and acquiesced " therein; that thereafter and on August 6, 1926, an agreement was entered into between the corporation and the defendants Comstock, Guggenheim, Man

and Perrine, whereunder these four defendants indorsed the corporation's note for $140,000. Certain collateral was pledged to them as security. The purpose of the agreement, it is averred, was that these four defendants should arrogate to themselves the management of the corporation's affairs and that under the guise of lending their credit to the corporation they placed themselves in the position whereby they would secure, upon their own terms and for their own use and purposes, in violation of their duties, all of the assets and property of the corporation.

That, pursuant to and in execution of this scheme, there was incorporated Southack & Ball Management Corporation, whose stock consisted of 1,000 shares of no par value, and all of which were issued to the bankrupt in consideration of the transfer to the management corporation of the entire management business of the corporation, consisting of the good will and all its contracts, valued by the board at the time at $250,000, but which, it is alleged, were worth in excess thereof; that thereafter the agreement between said four defendants and the corporation was altered so as to include the 1,000 shares of management stock; that then the aforementioned defendants, as a part of the aforesaid scheme, transferred all of the collateral in their possession to the American Trust Company as security for loans which had been made by that bank and guaranteed by the directors pursuant to the agreement of August 6, 1926; that thereafter these four so maneuvered that the collateral was sold and the aforementioned defendants purchased the same for $1,000 when, in fact, the shares of the management corporation were valued in excess of $250,000.

It is objected that this moving defendant did not cause or participate in the acts complained of in this eighth cause.

Sufficient is alleged, however, to taint the moving defendant with the general charge of negligence respecting this transaction. The eighth cause, therefore, is held to state a cause of action against the moving defendant.

The ninth cause charges the defendants with mismanagement in connection with the affairs of the Thayer West Point Hotel Corportion (in which the bankrupt was interested), the bankrupt having guaranteed payment of the bills of the builder and other contractors. It is charged that the construction costs exceeded what they should have, and as a consequence of this mismanagement regarding the hotel the bankrupt sustained damage in the sum of $585,279.09.

The moving defendant insists that the directors cannot be held personally liable because a building venture exceeds in cost the preliminary estimate and that, in effect, a mere error of judgment is alleged. Of course, the exercise of bad judgment alone cannot be

made the foundation for liability. This ninth cause, however, goes beyond that, and charges that alterations of the plans of the hotel were made by the defendants "without any competent or proper or adequate investigation upon their part or consultation amongst themselves or with others as to the financial obligations necessarily to be incurred thereby and the means of financing the same and without any reasonable or proper regard to the financial obligation of the corporation by virtue of its guaranteeing of the existing contracts relating to the erection of said hotel and that the defendants with gross and culpable negligence did not make any adequate or proper arrangements for the financing of said additional expenditures in said sum of almost Eight Hundred Thousand Dollars." In this connection all of the defendants are charged with "gross and culpable negligence * * * and * * * wanton disregard of their obligations as directors." These allegations are adequate.

The tenth cause is general in terms, but taken in connection with the allegations set forth in the preceding nine causes, which are realleged, and considering that the defendants are called upon to account, it is sufficient. The defendants' remedy for an amplification of the charges alleged in this cause, as well as the other causes, is a motion for a bill of particulars.

The eleventh cause accuses the defendants of unlawful conduct in speculating with the bankrupt's money in Florida real estate, it being charged that an investment was made in a corporation owned and controlled by certain of the defendants, as a consequence of which the bankrupt was damaged in the sum of $75,000. It is alleged that all of the defendants approved, ratified and acquiesced in the unlawful purchase of this worthless stock. This eleventh cause charges more than mere error of judgment, and is sufficient to compel all of the defendants to account for their conduct in connection therewith. Where a fiduciary is personally interested in a transaction concerning the trust, "there is in equity a presumption against the transaction, which he is required to explain." (*Sage* v. *Culver*, 147 N. Y. 241, 247.) In such a case only a *prima facie* case would be established. (*Coplay Cement Mfg. Co.* v. *Loeb*, 124 Misc. 640; affd., 215 App. Div. 805.)

For the reasons above stated, the motion of the defendant Man is in all respects denied.