(81 Misc. Rep. 664.)

MORAN et al. v. VREELAND et al.

(Supreme Court, Special Term, New York County. July, 1913.)

1. CORPORATIONS (§ 320*)—DIRECTORS—NONFEASANCE—NATURE OF LIABILITY.

Liability of directors of a corporation for nonfeasance is purely a legal one for damages due to the corporation, and hence stockholders as such have no capacity to sue therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

2. CORPORATIONS (§ 320*)—DIRECTORS—NONFEASANCE—STOCKHOLDERS—RIGHT TO SUE.

Stockholders of a corporation may sue in equity to enforce the rights of the corporation against directors and others guilty of having depleted, wasted, or misappropriated the corporation's property only after the corporation or its legal representatives have refused to commence and continue the action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

3. CORPORATIONS (§ 320*)—STOCKHOLDERS—SUIT AGAINST DIRECTORS.

Where stockholders have been forced to sue in equity for nonfeasance and breach of duty of directors, and the corporation and its representatives have refused to sue, the stockholders may continue the suit and obtain complete relief, though the corporation itself might have maintained an action at law therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

4. CORPORATIONS (§ 331*)—TRANSFER OF ASSETS—LEASE—SUIT AGAINST DIRECTORS—COMPLAINT.

Where all the property of a corporation was delivered to two other corporations under a lease, a complaint against directors of the lessees failing to allege that they had been guilty of any affirmative act of misappropriation, or that any property of plaintiff's corporation had come into their possession and been wasted or converted by their acts and the complaint as to them charging mere nonfeasance, it did not state a cause of action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1448, 1449; Dec. Dig. § 331.*]

5. CORPORATIONS (§ 341*)—LIABILITY OF DIRECTORS—RIGHT TO SUE.

Where stockholders of a lessor street railroad corporation sued the directors of the lessee corporations to recover for loss of the leased property, they could not recover on the theory that the contract of defendant directors with their respective corporations as to their duties inured to plaintiff's benefit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1479–1484; Dec. Dig. § 341.*]

6. CORPORATIONS (§ 357*)—DIRECTORS—NONFEASANCE—STOCKHOLDERS' SUIT—PARTIES—RECEIVERS.

In a stockholders' suit to recover damages against directors of other corporations to which the assets of plaintiff's corporation had been leased, the receivers of the lessee corporations having no connection with the default alleged were not proper parties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1500, 1501; Dec. Dig. § 357.*]

7. ACTION (§ 50*)—JOINDER—PARTIES.

A stockholders' suit against directors to recover for nonfeasance and loss of the property transferred to other corporations under lease alleged

---

a cause óf action for defendants' failure to repair the road belonging to plaintiffs' corporation, pay taxes, assessments, and license fees, and to refund or repay the bonded indebtedness of the corporation. *Held*, that those defendants who were not directors at the time when such repairs should have been made or taxes paid, could not be affected by such cause of action, and hence their demurrer to the complaint for improper joinder of causes of action would be sustained, as such causes did not affect all the parties to the suit.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

Action by Anson B. Morgan and others, as stockholders of the Central Park, North & East River Railroad Company, against Herbert H. Vreeland and others. On demurrers to complaint. Sustained in part, with leave to file an amended complaint as to certain of the defendants within 20 days.

Strong & Mellen, of New York City, for plaintiffs.

James L. Quackenbush, of New York City, for defendants Anderson, Fahnestock, Meade, Gannon, Warren, Smith, Guggenheim, Shonts, Belmont, Vreeland, T. F. Ryan, Sayre, Moorehead, Berwind, and Robinson.

MacFarland, Taylor & Costello, of New York City, for defendant Crimmins.

Cravath & Henderson, of New York City, for defendants Schiff and Cravath.

William M. Coleman, of New York City, for defendants Root and Starrett.

PAGE, J. This is an action by the plaintiffs, as stockholders of the Central Park, North & East River Railroad Company, hereinafter called the Central Company, to compel the defendants to account for the property of that company which, it is alleged, was under their management and control during a number of years. There are 35 individual defendants, comprising the men who have been directors of the Central Company, the Metropolitan Street Railway Company, and the New York City Railway Company, or of at least one of the said companies, at various times from 1892 until 1912. The Central Company is joined as a defendant for the reason, as alleged, that a demand was made by the plaintiffs upon that company that it commence and prosecute this action, and it has refused and neglected so to do, for which reason the plaintiffs are suing on behalf of themselves and all other stockholders of the Central Company similarly situated. The defendants have demurred separately to the complaint, the principal grounds of demurrer being: First, that the complaint does not state facts sufficient to constitute a cause of action; second, misjoinder of causes of action; third, defect of parties defendant; fourth, that the plaintiffs have not legal capacity to sue. The issues of law raised by the several demurrers have been brought on for argument as contested motions under section 976 of the Code of Civil Procedure.

The complaint alleges: That the Central Company was the owner of franchises, rights, and privileges from the year 1860 until November 14, 1912, and laid and maintained certain street railway lines in

the city of New York, and was possessed of certain real and personal property and franchises pursuant to an act of the state Legislature and resolution of the common council of the city of New York. That on or about December 1, 1872, the Central Company issued bonds for the payment of $1,200,000, payable December 1, 1902, bearing interest semiannually at 7 per cent. per annum secured by a mortgage to the Farmers' Loan & Trust Company as trustee upon all the "property, premises, rights, privileges, and franchises" of the said Central Company, in which mortgage it was provided that, if default should be made in the payment of principal or interest of the said bonds for 60 days, the said trustee should foreclose the mortgage, and there was a further provision for payment of all future taxes, assessments, and liens upon the property by the Central Company. That on October 14, 1892, the Central Company leased all of its property and franchises, except its franchise to be a corporation, to certain companies which were finally merged into the Metropolitan Street Railway Company, hereinafter called the Metropolitan Company, which company entered into possession and operation thereof. That on February 14, 1902, the Metropolitan Company leased all of the said property and franchises of the Central Company to the New York City Railroad Company, hereinafter called the City Company, and that the City Company assumed all the obligations of the lease of October 14, 1892, and entered into possession and control of the property and franchises of the Central Company. That the lease of October 14, 1892, provided, among other things, that the lessee should have the exclusive right to manage the demised property, determine rates, charge and collect tolls, and appropriate the same to its own use, and to exercise all the powers and authority of the lessor, and all of its rights and easements convenient and necessary to the construction, maintenance, and management of the railroads. For the purpose of enabling the lessee to enjoy the said property and privileges the lessor appointed the lessee its attorney irrevocable to do all things in the furtherance of the objects set forth in the lease in the name of the lessor, but at the expense of the lessee. That the lease of October 14, 1892, contained a further provision that all the debts and liabilities of the lessor are assumed by the lessee and—

"whenever any of the funded debt of the party of the first part [Central Company] shall become due and payable, the party of the first part shall upon the request of the party of the second part [lessee] provide for the renewal thereof by the issue or renewal of bonds in the customary form, and upon like request shall secure the same by mortgage or mortgages upon all its property and franchises."

That neither the Metropolitan nor the City Company, which succeeded to and assumed the rights and liabilities of the Metropolitan Company under the said lease, ever requested the Central Company to provide for the renewal of the funded debt of $1,200,000 or any part of it. That during 1893 and thereafter until July 11, 1908—

"all corporate action of defendant Central Company was absolutely controlled and dictated, as well as every and all action on the part of its board of directors, by the Metropolitan Company * * * and the City Company; substantially the same individuals, all being defendants herein, constituted and were the directors and officers of the Central Company and the Metropolitan.

Company from on or about October 14, 1892, until on or about February 14, 1902, and thereafter of the Central Company, Metropolitan Company and City Company."

That the defendants as directors of the three companies failed to provide for the renewal, refunding, or payment of the said bonds and mortgage, and allowed it to remain outstanding and overdue for a long period. That on March 21, 1902, the Metropolitan Company issued its refunding bonds secured by a mortgage to the Morton Trust Company as trustee, which was a lien upon its rights as lessee under the Central lease, and in July, 1902, the directors of the Metropolitan Company adopted a resolution requesting the said trustee under its refunding mortgage to certify and deliver to the Metropolitan Company $1,200,000, face amount, of the said refunding bonds of the Metropolitan Company against the deposit with the trustee of $1,200,000 in cash to be used by it in taking up the entire issue of Central Company bonds above mentioned. That the $1,200,000 cash was so deposited with the trustee and was used by it to purchase the Central Company bonds which were stamped:

"Nonnegotiable. Held in trust for the purposes declared in the refunding mortgage of the Metropolitan Street Railway Company."

It is alleged that in an action brought by the Farmers' Loan & Trust Company to foreclose the Central Company mortgage it was adjudged and determined that the deposit of the Central Company bonds and stamping of them as aforesaid was not a payment of the bonds, and that they remained an outstanding obligation of the Central Company and secured by its mortgage of December 1, 1872. It is further alleged that the defendants, in violation of the terms of the lease with the Central Company, allowed the property of that company to become out of repair, and a large part thereof to be lost and destroyed, and allowed taxes, assessments, and license fees to remain unpaid. There is an allegation that the defendants were skilled in such matters and well knew the result of their neglect and mismanagement. That as a result of the above the mortgage of the Central Company to the Farmers' Loan & Trust Company was foreclosed on December 16, 1911, and all its property sold to one Edward Cornell for $1,673,000, subject to a large amount of unpaid taxes and other incumbrances.

Then follows an allegation that in 1907 both the Metropolitan and City Companies went into the hands of receivers in insolvency, and the receivers under direction of the court refused to adopt the Central Company lease, and ceased to operate its railroad on August 6, 1908, and turned over to the Central Company all of its property which could be identified, which included no cars or equipment, and consisted of merely the real estate and tracks, with a little office furniture and some records. That as a result the Central Company has been deprived of its property, and burdened with large debts, and had its property returned in a dilapidated condition, to its damage in the sum of $2,000,000.

The relief demanded is that the defendants and each of them be required to account with respect to the administration of the trusts reposed in them as directors, and under said leases, that their liabil-

ity to the Central Company and its stockholders be determined, and that a judgment be entered against them severally requiring them to pay to the Central Company the value of all its property lost or wasted and all damages sustained by reason of their neglects, nonfeasances, and breaches of trust.

The demurring defendants may be divided into two classes, namely, those who were directors of the Central Company at the time of and subsequent to the falling due of the bonds of that Company on December 1, 1902, and those who were never members of the board of directors of the Central Company, but are being sued as directors of the Metropolitan and City Companies.

[1] As to the first class, those defendants who were directors of the Central Company, the demurrers on the ground that the complaint does not state facts sufficient to constitute a cause of action must be overruled. The cause of action set forth is not strictly one for an accounting, for the reason that it is not alleged that any specific property of the corporation came into the hands of the Central Company directors for which they are accountable. On the contrary, it appears that all the property of that company was lawfully delivered over to the Metropolitan and City Companies pursuant to the lease of October, 1892. The allegations of the complaint merely set forth a liability on the part of these directors for negligence in failing to enforce the terms of the lease, failing to compel the refunding or payment of the bonded indebtedness of the company, the payment of taxes, fees, and assessments upon its property, and the proper maintenance of the road and equipment. These acts were acts of nonfeasance giving rise to a purely legal liability for damages. O'Brien v. Fitzgerald, 6 App. Div. 509, 39 N. Y. Supp. 707, affirmed on opinion below 150 N. Y. 572; Asphalt Const. Co. v. Bouker, 150 App. Div. 691, 694, 135 N. Y. Supp. 714.

[2] But these plaintiffs as stockholders have no standing in a court of law to maintain such an action. It is only after the refusal of the corporation or its legal representatives to commence and continue the action that the stockholders may come into equity as the equitable owners of an undivided share of the assets of the corporation and enforce the rights of the corporation against the directors or any others who have depleted, wasted, or misappropriated its property and to this end they may prosecute any cause of action whether legal or equitable. People v. Equitable Life Assurance Society, 124 App. Div. 714, 734, 109 N. Y. Supp. 453. It has been frequently held in this state that a court of equity, after it has once acquired jurisdiction of the action will compel directors to answer in damages for their failure to properly protect and care for corporate assets, notwithstanding the fact that an action at law for the same damages might have been maintained. In Bosworth v. Allen, 168 N. Y. 157, 167, 61 N. E. 163, 165 (55 L. R. A. 751, 85 Am. St. Rep. 667), which was an action by a corporation against its directors for an accounting of property in their possession and control which was misappropriated and wasted by them in conspiracy with others, the Court of Appeals held, Mr. Justice Vann writing:

"Through an action for an accounting a court of equity has power to discover and fix the value of all assets improperly withheld pursuant to the conspiracy, and of all property lost and damages caused by the wrongful acts of the defendants, and to compel them jointly and severally to pay the aggregate amount over to the plaintiff. * * * The defendants violated their duty as trustees, and equity will award complete relief in a single action for all the consequences of such violation, even if a part thereof might be had in an action at law."

[3] Similarly in the case at bar the plaintiffs have been forced to come into equity for their relief, and their action against the directors of the Central Company to compel them to answer for their negligence and breach of duty will be sustained in equity under the allegations of the complaint, though an action at law for the same relief might have been maintained by the corporation whose stockholders they represent.

[4] The demurrers of those defendants who were never directors of the Central Company, but are sued as directors of the Metropolitan and City Companies, are sustained. I am of the opinion that as to them the complaint does not state facts sufficient to constitute a cause of action. The relationship between the Central Company and the Metropolitan and City Companies was that of lessor and lessee. The acts set forth in the complaint were breaches of the lease and covenants between these corporations, by reason of which an action would lie against the lessee companies by or in the name of the lessor. It might even be maintained that the Metropolitan and city companies occupied a fiduciary relationship toward the Central Company; but it is quite a different matter to charge the directors of those companies with personal liability to the lessor for breaches of the lease. They owed no duty to the Central Company or to its stockholders. A director's relationship to his corporation is that of a quasi trustee, for which reason he is obliged to use extraordinary diligence in managing its affairs, and may be answerable in damages for his negligence in failing to act when action on his part was necessary and prudent. But as to third parties a director is merely the agent of his corporation. His title and possession of the property which he controls and his acts are all those of the corporation which he represents as agent. Like any agent, he may be held liable to third parties for his torts and crimes; but he does not personally assume the duties which his corporation owes to others, and where he has assumed no duty by contract or otherwise he is not answerable for his nonfeasance to any but his principal, the corporation of which he is the servant. It is not alleged in the complaint that any of the directors of the Metropolitan or City Companies have been guilty of any affirmative act of misappropriation, or that any property of the Central Company has come into their personal possession and been wasted or converted. The specific acts complained of, and for which redress is demanded, are all acts of nonfeasance in failing to renew the bonds of the Central Company, failing to pay taxes and assessments, and failing to repair the road and equipment and maintain it in good order. The only obligation which the Metropolitan or City Companies owed to the Central Company

to perform these acts arose out of their lease and covenants so to do. The directors of the lessee companies were not parties to the lease. They assumed no obligation to the lessor by contract. Neither they nor their principals, the lessee corporations, owed any duty to the Central Company independently of the contract, so far as the plaintiffs are concerned.

[5] The plaintiffs have attempted to spell out a cause of action against these directors for their nonfeasance by bringing the case within the rule of Lawrence v. Fox, 20 N. Y. 268, holding that one, not a party to a contract made for his benefit, may sometimes sue and recover the benefits which he was intended to reap. The doctrine of Lawrence v. Fox, however, has been strictly limited to actions in contract, where the contracting party in whose right the action is brought owed a corresponding duty to the beneficiary. The present action is not an action to recover from the directors of the Metropolitan and City Companies damages for breach of their contract with the corporations made for the benefit of the Central Company. No such contract was ever made by these defendants, and the duty which they owe to their corporation to care for and manage its property is distinct from, and not commensurate with, the obligations assumed by the lease of October, 1892, which the plaintiffs are attempting to enforce. The cases cited are accordingly not in point.

In the other cases relied upon by the plaintiffs, in which third parties were held liable with directors to account for the corporate property, either the element of conspiracy is present to connect the acts of the parties with each other, which is here lacking, or some affirmative act of misfeasance is shown. Gray v. Fuller, 17 App. Div. 29, 44 N. Y. Supp. 883; Bosworth v. Allen, supra. No precedent has been called to my attention to support the present action against the directors of the Metropolitan and City Companies as such, and upon theory and reason it cannot be sustained under the allegations of the complaint.

[6] It only remains to consider the other grounds of demurrer set forth by the directors of the Central Company. As to the third ground alleged, defect of parties, in that the receivers of the Metropolitan and City Companies should have been joined as defendants, the demurrers are overruled. The only cause of action stated in the complaint is one against the directors of the Central Company for their negligence and breach of duty. The receivers of the Metropolitan and City Companies have no connection with such an action and would not be proper parties.

[7] The demurrers on the ground that the plaintiffs have no legal capacity to sue are overruled. The complaint alleges that a demand was made upon the corporation that it commence and maintain the action, and that the corporation neglected and refused so to do. This is admitted by the demurrer. After the said refusal of the corporation, the right of these plaintiffs to bring the action accrued at once, and fixed their capacity to sue beyond question.

The only remaining ground of demurrer alleged is that causes of action have been improperly united. Though in an action in equity

great latitude is permitted in combining causes of action against various defendants in order to prevent multiplicity of suits, and by bringing together all the parties to a transaction or connected series of transactions do complete equity and justice in a single action, there are certain fundamental rules which must not be violated. It is every man's right not to be involved in the litigation of issues with which he has no connection. It is accordingly held that:

"Whether the action be at law or in equity, the causes of action must affect all of the defendants, although it is not essential in equity that they shall all be affected alike, and those affected by all of the causes of action, as well as those affected only by one or more, may properly demur upon this ground. O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46, 76 N. E. 1082; Nash v. Hall Signal Co., 90 Hun, 354, 35 N. Y. Supp. 940; Nichols v. Drew, 94 N. Y. 22; Stanton v. Missouri Pac. R. R. Co., 2 N. Y. Supp. 298; Sayles v. White, 18 App. Div. 590, 46 N. Y. Supp. 194, etc." People v. Equitable Life Assurance Society, 124 App. Div. 714, at page 729, 109 N. Y. Supp. 453, at page 465; Code Civ. Proc. § 484.

The complaint in this action sets forth a cause of action for failure of the defendants to repair the road, pay the taxes and assessments, pay license fees, and refund or pay the bonded indebtedness of the corporation. The dates when the duty to repair as to various portions of the road arose are not set forth; neither are the dates when the taxes and assessments and fees accrued and were unpaid. It is a matter of common knowledge, however, that those obligations accrued independently from year to year. The dates at which the various defendants were members of the board of directors of the Central Company are set forth, from which it appears that they were not all directors during the entire period complained of. It is apparent, therefore, that those defendants who were not directors of the company at the time when certain repairs should have been made or taxes fell due or at any time thereafter would not be affected by any cause of action for neglect or failure in regard to them. It also appears that the bonds of the Central Company which the plaintiffs claim should have been refunded or paid, and upon which claim the main cause of action is based, did not become due until the year 1902; but the defendants Pearson and Beattie ceased to be directors of that company in 1901. They could not, therefore, be affected or interested in that cause of action set forth. As the causes of action joined do not affect all the parties to the suit, the demurrers of the defendants on that ground must be sustained. Code Civ. Proc. § 484; Nichols v. Drew, 94 N. Y. 22.

Leave to plaintiffs to serve an amended complaint within 20 days upon payment of $10 costs to such defendants, directors of the Central Company, as are retained. Complaint dismissed as to the directors of the other companies, who were not also directors of the Central Company, with $10 costs.

Ordered accordingly.