THE EMPIRE LUMBER COMPANY, Respondent, *v.* PARSHELSKY BROTHERS, INC., Appellant.

Second Department, May 26, 1922.

Sales — action by seller acting as broker to recover balance of purchase price of lumber to be used on government contract — counterclaim for damages on account of failure to fill order — defendant agreed to secure government permits to ship — delay of one month in securing permits justified seller in canceling contract.

In an action by a seller, acting as a broker, to recover the balance of the purchase price of lumber sold to defendant to be used in connection with military operations of the United States, in which the defendant interposed a counterclaim for damages on account of an alleged failure of the plaintiff to fill an order, it appeared that the order was for immediate shipment; that the defendant agreed to secure government permits to ship the lumber by rail; that the order on which the counterclaim was based was accepted on the 24th day of March, 1918; that the defendant could not procure government permits as he agreed to do for the twelve cars then ordered, but was able to procure permits for three cars only on the 27th day of April, 1918, and that the plaintiff had earlier notified the defendant that it had canceled the order for failure to receive permits, and after receiving the permits for the three cars refused to reinstate the order.

*Held*, that the defendant cannot recover on his counterclaim for he undertook absolutely to secure the permits for the shipment of the lumber which was ordered by him for immediate shipment, and his failure to procure the necessary permits for more than one month after the order was accepted was unreasonable and justified the plaintiff in canceling the order.

APPEAL by the defendant, Parshelsky Brothers, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 9th day of August, 1921, upon the report of an official referee appointed to hear and determine the issues.

*Herman S. Bachrach,* for the appellant.

*Alexander T. Wells* [*Howard B. Harte* with him on the brief], for the respondent.

Judgment unanimously affirmed, with costs, on the opinion of Hon. EDWARD B. THOMAS, official referee.

Present — BLACKMAR, P. J., RICH, KELLY, JAYCOX and YOUNG, JJ.

The following is the opinion of the official referee:

THOMAS, Official Referee:

The plaintiff sues for a balance alleged to be due on two lots of lumber sold defendant, but the defendant asserts some credits later discussed. Against whatever sum is due the plaintiff, the defendant counterclaims for damages on account of an alleged failure of the plaintiff to fill an order for lumber made by defendant and accepted by plaintiff upon terms and under conditions that I will now consider. The plaintiff was in fact a broker for another actually supplying the lumber, but as to the defendant the plaintiff was the principal. Plaintiff's relation to a third party is material only in the embarrassment that defendant's delay in obtaining the permits for transportation imposed, and in the final inability of plaintiff to retain the lumber for delivery. The orders accepted by plaintiff were placed with the Geddes Lumber Company, which made shipments from Jeffersonville, Ga., for delivery at Camp Upton, L. I., and the material was solely for the use of the United States in connection with military operations. No car could be placed or used for such transportation without the consent of the government, evidenced by permits issued by the one in authority at Camp Upton, or after April first or thereabouts by a bureau at Washington, to which the sole power was committed. The defendant's dealings with plaintiff began in the last of 1917, and pursuant to them some twenty-five or more carloads were sold and delivered. The last order was made March 16, 1918, and accepted March twenty-fourth to the extent of twelve cars. But the defendant failed to furnish the permits, which were necessary to allow the waiting shipment to go forward, although plaintiff made therefor repeated demands, with warnings that the lumber could not be held, and with statements finally that the order was canceled.

The defendant concedes that the duty of procuring the permits

rested with it. It furnished no permits for the shipments in question until April 27, 1918, and then only for three of the twelve cars necessary to transport the entire order. The plaintiff had earlier notified the defendant that it had canceled the order for failure to receive permits, and after receiving the three car permits plaintiff refused to reinstate the order. The defendant did not obtain the permits, although its representative made frequent visits to the office of the issuing agent at Washington and importuned for their issue. The defendant had undertaken something that he was powerless to procure, except to the extent of three carloads, as above stated, although it did what was within its abilities to fulfill the obligations. The only question is whether the plaintiff was bound to wait longer before canceling the order. The length of time it should abide the forthcoming of the permits must be judged by the terms of the contract, read in view of their previous dealings, and the circumstances that environed the parties. The defendant's letter of November 30, 1917, seems to introduce the parties to the course of dealing by stating that " we are in the market for 50 to 100 carloads of " material, and adding, " Please let us know what are your best prices for spot cash, quick shipments for Government contracts. Kindly let us hear from you, giving us your best prices; also how soon you could furnish * * *." The intention that the shipments should be prompt is indicated not only by the above, but by later communications, as in defendant's letter of January 19, 1918, and plaintiff's letter of February 23, 1918. Moreover, the exigencies of the government demanded haste; the activities of business exacted the greatest practicable celerity of movement of material. In fact, the nation and those in commerce were in extremities, and all such conditions gave a new complexion to affairs. While every adventure in business was affected by haste, there was the accompanying consideration that private initiative and dispatch were constrained by the interposition of government control of facilities and supplies, and that promises should be made with cautious regard for such constraints. Hence, plaintiff accepted the order subject to war measures. Of the innumerable war measures, one was that no car should be moved without the consent of the government. Hence, all speed in shipment, even to the government or for the government, as was the case here, was measured by the consent of the government, solicited and obtained, if obtained, amidst what might seem a confusion of multitudinous and varied demands besetting the office or bureau where the power rested. But the defendant undertook to meet the particular war measure of obtaining the needful consent for cars. Hence, while the contract and

the conditions of its making and performance involved haste, the government control of the cars might aid or retard fulfillment. But the defendant took upon itself the removal of the impediment of governmental intervention. Hence, the promptness which the plaintiff and defendant regarded as an ingredient of their dealings was not abated by any interfering war measure, so far as plaintiff is concerned, because defendant took upon his own shoulders the disposal of the measure. The defendant wanted haste, and undertook to remove the chief obstacle to it. Therefore, it cannot interpose as an excuse for the delay the very impediment that it agreed to eliminate. I do not doubt the sincerity or zeal of the defendant in the effort to obtain the permits, or that its applications, urgently made, were withheld by the manifold obsessions of public business, maybe through the lack of efficiency or co-ordination on the part of the officials in charge. But the risk of that fell on the defendant, and the injury from it should not be transferred to the plaintiff. The defendant has suggested that the plaintiff canceled the order on account of the advantage to it of a rising market. But it was not plaintiff's duty to hold the lumber so that defendant could get the benefit of the bettering price provided defendant was in delinquency in obtaining the permits. The defendant could not justly hamper or deprive the plaintiff by omission to obtain the permits in season. However, the defendant had been frequently warned, if warning was fair or necessary. The correspondence shows multiplied requests for the permits, with distinct declarations that the order would otherwise be canceled. The entire situation, the dealings of the parties, the contract read in the light of the time announced to the defendant that the delay continuing was at its peril. So the whole question is, did the delay continue unduly? In my judgment, it did. It outran the intention of the parties and the obligation of the contract. From March 24, 1918, to April 27, 1918, was in itself a space of time that the state of business would not tolerate, especially as there was no evidence of a definite limit to the delay. The justification of the plaintiff in canceling the order is fortified by the fact that as late as April twenty-seventh the defendant had procured but three of the needed twelve car permits. It all illustrates the defendant's misfortune that he had made a promise that he could not fulfill in any degree for a month or more, then only in a fragmentary manner. Hence it seems that an entire order for twelve cars was by reason of defendant's perplexity split into lots, moved by permits, some sent on April twenty-seventh and some waiting dispatch at an unnamed time, or at indefinite times in the future. There should be no confusion of defendant's good faith

and inability to get the permits, with his duty to get them within a time that the parties must have regarded as reasonable. It was not a thing to be done instantly. But the plaintiff had sold lumber for immediate delivery, and was bound to have the lumber in readiness for shipment, as it had. It was not a producer, but in common with dealers without mills dependent upon a source of supply. The defendant's contention is that the plaintiff having made itself ready to deliver, should have kept itself in readiness and waited. But that ignores all conveniences and embarrassments, except such as attended the defendant, without any consideration of advantage, except what defendant would get from holding the plaintiff to the shipment. That makes the defendant's agreement to furnish the shipment permits a vague and unreliable promise. It is my judgment that defendant's counterclaim should be dismissed, and that the plaintiff should recover the balance due on earlier shipments, less shortage and correction in measurements. I do not allow the two per cent discount for payment within fifteen days, as payment was not made within such time. If the defendant elected to take the benefit of the discount, it should have paid within the time and waited adjustment in case of shortage. It could not expect under such a provision that the buyer could await arrival, measurements and acceptances and then obtain a discount. I have not allowed credits for freight other than those conceded by plaintiff, as no further data has been supplied after much opportunity resulting in delay, which I regret. I have ascertained the shortage in the only way that the deficient record seems to permit.