GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Liquidator of STATE TITLE AND MORTGAGE COMPANY, Plaintiff, *v.* EUGENE J. CARR and Others, Defendants.

Supreme Court, Special Term, New York County, February 5, 1938.

*Alfred C. Bennett* [*Abraham J. Halprin* and *Samuel Boksenbom* of counsel], for the plaintiff.

*Edmund J. Donegan,* for the defendants John A. Dilliard, Max N. Koven, Charles P. Loeser, George B. Skiffington, A. Albion Russell and Edmund J. Donegan.

*Max N. Koven,* for the defendant Albert N. Roemer.

*George D. Zahm* [*George D. Zahm* and *William Roth* of counsel], for the defendant Louis Gold.

*Kadel, Van Kirk & Trencher* [*John Kadel* and *Samuel Silverman* of counsel], for the defendant William O. Smith.

*Herbert Ascher* [*John Kadel* of counsel], for the defendant William H. Lyons.

*William Walzer,* for the defendant Audley Clarke.

*Adrian J. O'Kane,* for the defendant James E. O'Kane.

HOFSTADTER, J. This action, a companion suit to *Van Schaick* v. *Aron* (170 Misc. 520), decided herewith, involves the liability of directors of State Title and Mortgage Company (hereinafter referred to as Mortgage Company) for losses claimed to have been sustained by the corporation on transactions alleged to have been in violation of statute.

Mortgage Company was one of the National American group, and many of the legal issues presented herein have already been covered in the decision in the *Aron* case. It will be necessary only to touch upon them briefly. The basis of liability in both cases is the same, the plaintiff contending that the directors participated in or approved transactions that contravened specific provisions of the Insurance Law and that their liability is measured by the loss sustained by the corporation thereby.

In this case the following transactions are sued upon:

1. The purchase of National American Company, Inc., note in the face amount of $250,000 from Brooklyn Trust Company by Gibraltar Realty Corporation, a wholly owned subsidiary of Mortgage Company. The claimed loss is $140,840.33.

2. Purchase of real estate by various wholly owned subsidiaries of Mortgage Company resulting in a loss of $138,857.

3. The declaration and payment of dividends by Mortgage Company during the years 1931 and 1932 in the aggregate amount of $299,475.

4. Loans by Mortgage Company directly to Realty Foundation, Inc., prior to July 22, 1931.

5. Similar loans by Rolanfin Corporation, a wholly owned subsidiary, subsequent to July 22, 1931.

No issue is raised as to the applicability of the Statute of Limitations, and the tenure in office of the directors is not in dispute. The other affirmative defenses are likewise disregarded by the court, as the defendants proffered no testimony in support thereof. The only pertinent issues which need be considered are the illegality of the transactions and the amount of the loss sustained.

I advert to the first transaction sued upon. On December 24, 1932, Gibraltar Realty Corporation, a subsidiary of Mortgage Company, purchased from Brooklyn Trust Company a demand note of National American Company, Inc., paying therefor the sum of $251,840.33 with moneys provided for that purpose by Mortgage Company.

It must be clear from what has already been decided that the purchase of this note, if it had been made directly by Mortgage Company, was in violation of the provisions of subdivision 4 of section 16 of the Insurance Law. Mortgage Company was forbidden to make any such purchase, and it is of no legal significance that as a matter of manipulation the transaction was consummated through the medium of a wholly owned subsidiary whose activities are not directly affected by the statutory prohibitions of the Insurance Law.

It is apparent from all the circumstances that Gibraltar Realty Corporation acquired the note, not in its own behalf, but solely in the interests of Mortgage Company and for its purposes, with funds furnished by the latter. The defendants do not dispute the basic facts and the evidence discloses that the subsidiary had no funds available to make the purchase in its own right. In view of these uncontradicted facts I conclude that the subsidiary acted as the agent of the dominant corporation in effecting the purchase, which in fact and law is deemed to be the purchase of Mortgage Company itself.

Any academic and metaphysical discussion of the precise relationship between a parent and subsidiary corporation is inappropriate in view of the established agency character of the transaction. Where a subsidiary is used as a mere agency or instrumentality of the owning company " the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transactions involved as if the corporate agency did not exist and as the justice of the case may require." (*Chicago, M. & St. P. R. Co.* v. *Minneapolis Civic Assn.*, 247 U. S. 490, 501.)

While it is generally accepted that each corporation in contemplation of law is a separate and distinct legal entity, even in the absence of a finding of agency, the parent corporation may be held chargeable for the acts of the subsidiary. " The logical consistency of a juridical conception will indeed be sacrificed at times when the sacrifice is essential to the end that some accepted policy may be defended or upheld. This is so, for illustration, though agency in any proper sense is lacking, where the attempted separation between parent and subsidiary will work a fraud upon the law." (*Berkey* v. *Third Avenue R. Co.*, 244 N. Y. 84, 95.)

The rationale of these decisions is plain. The sphere of activity of a corporation affecting the public interest is circumscribed by the dictates of a sound public policy. While the statements of law relied upon by the defendants are appropriate on the facts before the court, each case is *sui generis,* and the court determines only on the record before it that an insurance company may not *evade* the statutory restrictions of the Insurance Law by resorting to the instrumentality of a wholly owned subsidiary and thereby accomplish indirectly that which it might not do directly.

Any other conclusion would lead to absurdity and result in the making available to insurance companies of a ready and easy means of evading responsibilities and obligations imposed by statute. The courts may not countenance a practice which thus nullifies the statute.

In the final analysis the legislative enactment itself is a sufficient answer to this contention of the defendants. Whatever the law applicable may be in dealing with other types of companies, the Legislature has clearly expressed itself in subdivision 12 of section 16 of the Insurance Law by forbidding any investment of the kind here sued upon by an insurance company " either directly, indirectly, remotely or in any other manner whatsoever." In the light of this broad and conclusive expression of legislative intent there is no room for any narrow and technical construction.

The responsibility of the directors of Mortgage Company for the acts of its subsidiary has been established. The attempt to justify this transaction on the ground of business expediency and good faith is wholly irrelevant. An investment made in contravention of a statutory prohibition is illegal, and, irrespective of reasons or motives, the directors who participated therein are liable for any loss sustained. There is a sound distinction between transactions which are merely *ultra vires* and those which violate statutory provisions. (*Corsicana National Bank* v. *Johnson*, 251 U. S. 68, 83; *Broderick* v. *Marcus*, 152 Misc. 413, 418.)

Nor is it a valid defense on the facts of this case that some of these defendants approved and ratified the purchase after its con-

summation by the executive officers of the company. In this aspect subsequent approval and ratification have the same effect as prior authorization, especially where such ratification vitiated a possible rescission of the transaction on the ground that it was not authorized by the directors. (See *City Investing Co.* v. *Gerken*, 121 Misc. 763, 764; *Medford Trust Co.* v. *McKnight*, 292 Mass. 1; 197 N. E. 649, 656, 663.) However, it appears that the defendant Lyons was not present at the meeting of the board of directors which ratified and approved the purchase of the note. His presence at a subsequent meeting during which the minutes of the prior meeting were read and approved does not, in and of itself, amount to his approval of the action theretofore taken. (*Hutchinson* v. *Curtiss*, 45 Misc. 484, 491.)

The amount of the loss, namely, $140,840.33, has been established by the evidence and the plaintiff may have judgment accordingly (except as against the defendant Lyons) on this item, together with appropriate interest from December 24, 1932.

During the years 1931 and 1932 Mortgage Company, through the medium of wholly owned subsidiaries, acquired various parcels of real estate. Here, also, on all the evidence the court regards the transactions of the subsidiaries as those of the dominant corporation, and the purchases will be treated as if they were made by Mortgage Company itself.

The defendants take the position that the purchase of the five parcels involved were in substance discounts on the sale of mortgages and as such were indispensable to enable the company to transact the normal business for which it was organized. But, assuming without deciding the factual basis for this contention, the propriety and legality of the purchases is wholly dependent on statutory authorization therefor.

Section 20 of the Insurance Law expressly forbids the purchase or retention of real estate by insurance companies except for the limited purposes specifically set forth in the statute. The defendants must bring the purchases within one of these exceptions. The only possibility is in subdivision 3, which permits the retention of real property " such as shall have been acquired for the accommodation of its business." In light of the context and with reference to subdivisions 1 and 2 of the same section, it is clear that this exception relates solely to the holding of real property which had been originally purchased for the *physical* accommodation of the business of an insurance company. It does not permit the acquisition of realty merely to stimulate or induce the sale of guaranteed mortgages by way of discount.

In this aspect the facts are not distinguishable from those before the court in *Van Schaick* v. *Manhattan Savings Institution* (273

N. Y. 37), and I deem that decision to be controlling. Referring to a substantially similar transaction, the court said (at p. 41): " It is undisputed that the real property which the defendant bank sold was not purchased for any of the purposes authorized by this section [20] of the Insurance Law. * * * There can be no doubt that Lawyers Mortgage Company was the actual purchaser of the real property from the defendant bank and that it had no right to make such purchase even though it acted through a dummy corporation. In that purchase it used the moneys of the corporation for a purpose not permitted by law."

Under these circumstances each director who participated in or approved the transactions is liable for the loss of $138,857.09 sustained by Mortgage Company. The plaintiff may have judgment, accordingly, on this item, together with appropriate interest.

In 1931 and 1932 dividends aggregating $299,475 were declared and paid by Mortgage Company to stockholders. The company had an ample surplus at the time of each payment and there was, consequently, no impairment of capital as the result of the action taken by the board of directors. No claim is made that these dividend payments were violative of section 58 of the Stock Corporation Law.

The plaintiff asserts, however, that the payment of dividends was, nevertheless, illegal and resorts to the provisions of section 173 of the Insurance Law and section 274 of the Debtor and Creditor Law to sustain his position. On the facts presented by this record this contention is untenable.

By the terms of section 173 of the Insurance Law Mortgage Company was required to invest not less than two-thirds of its total paid-in capital in minimum capital investments to be known as its guaranty fund. The funds thus invested " shall be held for the security and payment of losses which may be incurred by reason of contracts of guaranty or insurance outstanding, and shall not be subject to other liabilities of the corporation."

It is conceded that Mortgage Company did not have the complete guaranty fund required by the statute at the time the dividends were declared. Section 173 was enacted in 1929, and there was and is grave doubt whether its provisions govern insurance corporations already in existence at the time of its enactment. In an opinion dated January 25, 1934, the Attorney-General ruled that it was not applicable. (Opinions of Attorney-General, 1934, p. 474.) The plaintiff takes a different view and asserts that it is. The court need not rule definitively on this question; in any event, it is clear that section 173 has no relation to the payment of dividends which do not contravene related statutes to which the

corporation is amenable. There is nothing contained in the section even by implication which restricts a corporation which has a surplus and profits in excess of its capital stock and liabilities from paying dividends to its stockholders even though the guaranty fund is impaired. Had the Legislature intended that no dividends be declared so long as the guaranty fund remained deficient it would have so provided, as was done in comparable situations with respect to banking institutions (Banking Law, § 204, since repealed), life insurance companies (Insurance Law, § 83), and fire insurance companies (Insurance Law, § 117).

The section itself provides for no civil liability on the part of the directors for failing to convert cash or other property of the company into securities fulfilling the guaranty fund requirements, and there is, consequently, no statutory basis for utilizing its provisions to create a new liability against directors for declaring dividends otherwise proper.

The liability of directors as regards dividend payments is governed by section 58 of the Stock Corporation Law, which concededly has no application to the facts here presented. Whatever rights may arise because of the impairment of the guaranty fund, the plaintiff suing here as liquidator of Mortgage Company has no cause of action in the absence of a substantiated claim of impairment of capital.

The court is not concerned after the event with the wisdom of the action honestly taken; it is sufficient that it was not in violation of any governing statute.

The resort to section 274 of the Debtor and Creditor Law is equally unavailing to the plaintiff on the facts here disclosed. It is not charged that the directors acted in bad faith or that dividends were declared to expressly avoid any outstanding or future liability of the company. While there is some indication in the case of *Palm Beach Co.* v. *Marcus & Co.* (246 App. Div. 591) that the payment of a dividend may constitute a fraudulent conveyance even though the corporation had a surplus and its capital is unimpaired, the decision is distinguishable on its facts. It appears from the decision at Trial Term that the dividend was there paid by a subsidiary to its parent company to avoid a known and existing liability. The court deemed this circumstance sufficient to make the transfer a fraudulent conveyance as to the creditor acted against. This circumstance is not borne out by the present record, and the ruling of the court must be limited to the situation before it.

The defendants may have judgment on this item.

Subsequent to February 27, 1931, Mortgage Company advanced directly to Realty Foundation, Inc., substantial sums of money

with a resultant claimed loss of $744,734.68. I determine from the evidence that these advances were made on the security of General Security Company stock and the unsecured notes of National American Company, and it is clear from what has elsewhere been decided that the illegality of the transaction is thereby established under subdivisions 4 and 12 of section 16 of the Insurance Law.

In view of this determination it is unnecessary to decide whether or not the claimed illegality of these transactions has also been demonstrated under subdivision 3-a of said section 16 of the Insurance Law.

The remaining question concerns the sufficiency of the evidence tendered to establish the loss claimed. The plaintiff has the burden of affirmatively showing that the violation of statute resulted in damage. (*Gallin* v. *National City Bank*, 152 Misc. 679; *Greene* v. *Boardman*, 143 id. 201.)

The situation here presented is comparable to that adverted to in the case of *Van Schaick* v. *Aron* (*ante*, p. 520), and a similar conclusion is arrived at.

The plaintiff made out a *prima facie* case by introducing in evidence various books, ledgers and other documents from which appeared the total amount of the advances and the amount recovered from Realty Foundation, Inc., by way of a dividend in bankruptcy or otherwise. The defendants offered evidence tending to establish that the greater part of the money borrowed by Realty Foundation, Inc., was used to purchase assets from Mortgage Company or to make other payments to Mortgage Company which ultimately was for Mortgage Company purposes and for its benefit. The court is satisfied from all the proof that the defendants have successfully met the *prima facie* case and that the plaintiff has failed to sustain the burden of proof resting upon him. Accordingly, the defendants may have judgment on this item.

The last item sued upon concerns loans by Mortgage Company to Realty Foundation, Inc., through Rolanfin Corporation, a wholly owned subsidiary of Mortgage Company. The claimed loss is $12,374.61. It has not been established that the Rolanfin Corporation acted as the agent of Mortgage Company in this transaction with money advanced by the parent corporation, and there is, consequently, no question of evasion of the statute by indirection, and the defendants may have judgment.

A verdict is directed for the plaintiff to the extent indicated herein. The plaintiff may have judgment against those defendants found to be liable herein in the sum of $279,697.42, with appropriate interest, less the amount heretofore received in settlement of the action.