David C. QUINN and Stuart M. Speiser, individually, and as stockholders of the Airways Club, Inc., a corporation, suing on behalf of themselves and all other stockholders of the Airways Club, Inc., similarly situated, and in the right of the Airways Club, Inc., a Delaware corporation, Plaintiffs,

v.

Troy V. POST et al., Defendants.

No. 66 Civ. 3281.

United States District Court
S. D. New York.

Jan. 5, 1967.

Speiser, Shumate, Geoghan & Krause, New York City, for plaintiffs; Stuart M. Speiser, Alfred W. Gans, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Troy V. Post, Greatamerica Corp., American-Amicable Life Ins. Co., Braniff Airways, Inc. and Gulf Life Ins. Co.; Sheldon Oliensis, New York City, Murray J. Laulicht, New York City, of counsel.

Kissam & Halpin, New York City, for defendants Morris D. Jaffe, First Financial Life Ins. Co., Wallace M. Greene, Raymond D. Luecker and Roger Zeller; Leo T. Kissam, Neal Hurwitz, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant The Airways Club, Inc.; Robert B. Fiske, Jr., John Zuccotti, New York City, of counsel.

## OPINION

WEINFELD, District Judge.

This is a derivative action on behalf of The Airways Club, Inc. (Airways) commenced in September 1966 in the New York State Supreme Court by two stockholder plaintiffs, one a citizen of the State of New York, and the other a citizen of the State of Connecticut. The complaint in a single claim alleges a conspiracy by the defendants, individuals and corporations, to waste the corporate assets of Airways, and generally to injure its business.

The action was removed to this court pursuant to 28 U.S.C. section 1441(a), upon a petition which alleged that, except for three defendants who were citizens of New York, the remaining defendants were citizens of states other than New York and that the action is one over which this court has original jurisdiction under 28 U.S.C. section 1332(a). The removal petition further alleged that the joinder of the three New York State citizens, Gustave L. Levy, Anthony B. Akers and William H. Osborn, Jr., was fraudulent and made for the sole purpose of defeating federal diversity jurisdiction. The petition was supported by the affidavits of the three resident defendants denying the basic allegations of the complaint.

The plaintiffs taking issue with the charge of fraudulent joinder now move to remand the action to the state court, insisting that the three New York citizens were named in good faith and upon a substantial claim that they and the other defendants are, by reason of various acts alleged in the complaint, jointly and severally liable for breach of their respective fiduciary duties to Airways which resulted in waste of its assets. The defendants thereupon offered additional affidavits of the three resident defendants, reiterating and amplifying their previous denials of wrongful conduct and their assertions that no basis exists for their inclusion as defendants. The affidavits, pro and con, are in sharp conflict. The court conferred with counsel as to whether an evidentiary hearing would shed greater light on the contested issues, and they were in accord that the affidavits fully present the matters upon which they rely to support their respective con-

tentions, and so the matter is ripe for disposition.

We necessarily turn to the complaint and concentrate upon those allegations which relate to the resident defendants. It alleges that prior to September 1, 1965 Airways was an organization dedicated to the safety, security and economy of airline passengers and acted as a "watchdog" of scheduled air carriers; that its services extended to providing its thousands of members with blanket air carrier accident insurance, which by reason of a favorable experience rating constituted a valuable asset of Airways; further, that some of its activities on behalf of its membership resulted in decreasing the income and increasing the expenditures of scheduled air carriers.

The basic charge is a general conspiracy to waste and despoil the assets of Airways for the benefit of Greatamerica Corp., Braniff Airways, Inc., and other corporate defendants, commencing about August 1964, when Greatamerica and other defendants obtained control of Braniff, and continuing to the date of the filing of the complaint, September 1966. Greatamerica, Braniff, First Financial Life Insurance Company, as well as other corporations, by reason of direct or indirect ownership of controlling stock in Airways, or by reason of ownership and control of its affairs through individuals named as defendants, are stated to be under a fiduciary duty to Airways and its minority stockholders.[1] It is also alleged that Levy was and is a director of Greatamerica and Braniff; that Osborn was and is a director of Greatamerica; that Akers was and is a director of First Financial Life Insurance Company; that each was under a fiduciary duty to Airways and its minority stockholders; that both Levy and Osborn played a role in a transaction whereby Greatamerica obtained control of Braniff.

The complaint further alleges that when in August 1964 Greatamerica obtained control of Braniff, because of Greatamerica's huge stockholdings in Braniff and because Airways' activities could affect changes in the income and expenditure of scheduled carriers, which in turn would influence the value of Greatamerica's holdings in Braniff stock, various defendants, including Levy and Osborn, decided "to neutralize, make captive, stultify and terminate the independent influence of * * * Airways"—to bring to an end Airways' services which previously had resulted in decreasing the income and increasing the expenditures of scheduled carriers such as Braniff, and, in general, to use Airways to the benefit of Braniff and to the detriment of Airways. It is further charged that to carry out this objective it was decided by various defendants, including Levy and Osborn, to transfer controlling stock-ownership in Airways to corporations or persons who would be under their control and would cooperate with them in carrying out the objective of using Airways to benefit Braniff in order to protect Greatamerica's investment in Braniff stock "without regard to the detrimental effects thereof on the financial condition of Airways and the value of its stock"; that to implement that purpose a number of defendants, including Levy and Osborn, met with other defendants, including Akers, during 1964 and 1965, which resulted in an agreement dated and effective September 1, 1965, to which First Financial Life Insurance Company was a party, whereby First Financial ostensibly acquired voting stock control of Airways, whereas in fact it was merely a device intended, by various defendants including Levy, Osborn and Akers, to retain joint control of Airways; to terminate the services it previously rendered to its membership; to divert its income; to charge to it expenses properly chargeable to other corporations; to use it as a device, front and facade for the sale of life insurance for the benefit of the defendants other than Airways; and in general to destroy its business for the benefit of Braniff and other defendants.

---

1. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Another claim is that the defendants destroyed a principal asset of Airways when the valuable blanket travel accident policy covering its members was cancelled in March 1966 as a result of causing Airways to omit payments of premiums to the issuer of the policy, although continuing to collect dues from Airways' members, and procuring the issuance of a new and less favorable policy with another company without advising the membership of the change, and that the sole purpose was to benefit other corporations in which one or more defendants were interested; that the alleged acts which resulted in destruction of this asset of Airways and its members were participated in by various defendants, including Akers, with the knowledge and acquiescence of other defendants, including Levy and Osborn. Finally, it is further charged that the various derelictions attributed to the defendants violated their fiduciary obligations to Airways; that "said defendants, including all defendants named as individuals personally and actively participating, continue to persist in such conduct up to and including the present time."

Reference is made to other events to set the matter in proper focus. Plaintiffs, in January 1966, had commenced a prior action in the New York State Supreme Court on behalf of Airways by the service of a summons.[2] In April 1966 they served their complaint, which, in large measure, contains substantially similar charges to those alleged in the instant case. The defendants were all those named in the instant suit, with the exception of Levy, Osborn and Akers, and Gulf Life Insurance Company, a Florida corporation. The defendants removed the first action to this court upon a claim of diverse jurisdiction and then moved to quash service of process and to dismiss the suit for lack of personal jurisdiction, or in the alternative for an order transferring the action to the United States District Court for the Western District of Texas, pursuant to 28 U.S.C., section 1404(a). Before the motion was heard, the plaintiffs filed a voluntary dismissal, which the defendants opposed and which is simultaneously herewith approved in an accompanying memorandum.

The defendants contend that the joinder of the New York residents herein is fraudulent because (1) the plaintiffs have no "conceivable" claim for relief against them; and (2) that plaintiffs know this is so, since in the original action those three defendants were not named and thus it is clear that the voluntary dismissal was for the sole purpose of commencing this action in order to include the three residents as defendants, thereby preventing removal to this court under its diversity jurisdiction.

The complaint upon its face alleges an adequate derivative claim for breach of fiduciary duty owing to Airways by all the defendants, including the New York State citizens and subjecting them to joint and several liability.[3] Even so, the pleading cannot defeat the nonresidents' right to removal if the resident defendants have no real connection with the controversy.[4]

**2.** New York Civil Practice Law and Rules § 304.

**3.** Dickinson v. Burnham, 197 F.2d 973, 981 (2d Cir.), cert. denied, 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678 (1952); Saranac & Lake Placid R.R. v. Arnold, 167 N.Y. 368, 60 N.E. 647 (1901); John H. Giles Dyeing Mach. Co. v. Klauder-Weldon Dyeing Mach. Co., 198 App.Div. 564, 190 N.Y.S. 726 (3d Dep't 1921), rev'd on other grounds, 233 N.Y. 470, 135 N.E. 854 (1922); Buckley v. Stansfield, 155 App. Div. 735, 140 N.Y.S. 953 (4th Dep't 1913), aff'd, 214 N.Y. 679, 108 N.E. 1090 (1915); Baker v. Baker, 122 Misc. 757, 204 N.Y.S. 11 (1924), aff'd, 212 App.Div. 850, 207 N.Y.S. 809 (4th Dep't 1925); German-American Coffee Co. v. Diehl, 86 Misc. 547, 149 N.Y.S. 413, 415 (1914), aff'd, 168 App.Div. 913, 152 N.Y.S. 1113 (1st Dep't), rev'd on other grounds, 216 N.Y. 57, 109 N.E. 875 (1915).

**4.** Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544 (1914); Illinois Cent. R.R. Co. of State of Illinois v. Sheegog, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909); Wecker v. National Enameling & Stamping Co., 204 U.S. 176, 182, 27 S.Ct. 184, 51 L.Ed. 430 (1907).

A joinder may be fraudulent and sham if the allegations in the plaintiffs' pleading with reference to the resident defendants are shown to be so clearly false and fictitious that no factual basis exists for an honest belief on the part of the plaintiff that there is liability—in short, that the joinder is without any reasonable basis in fact and is made without any purpose to prosecute the cause in good faith against them.[5] The burden of proof on the issue is upon the defendants and evidentiary facts must support the charge.[6] They press hard that they have satisfied this burden by the plaintiff's omission to include the resident defendants in the prior suit; by the voluntary dismissal of the original action after it had been removed to this court; by a statement in plaintiffs' brief in support of the voluntary dismissal that "a plaintiff will be permitted to dismiss the action removed to a federal court notwithstanding that plaintiffs' purpose in so doing is to defeat removal and get the litigation back into the state court"; and, finally, by the strongly worded specific denials by the resident defendants of the commission of or participation in the tortious acts alleged in the complaint. None of these factors singly or in combination sustain the defendants' claim of fraudulent joinder.

While the resident defendants deny the wrongful conduct charged in the complaint, what is not and cannot be denied is that each was and is a director of the named corporation which allegedly, by reason of domination and control of Airways, is in fiduciary relationship to Airways, as is each resident defendant. The wrongful conduct allegedly committed in concert by the defendants occurred within periods when the resident defendants were such fiduciaries. However, in rebutting the charges, two of the resident directors assert "to the best of their knowledge" they never heard of Airways until April 1966 when one of the plaintiffs wrote to them on the subject matter of the charges; the other asserts he did not become a director of the corporation until April 1966, whereas they stress that the wrongful conduct is alleged to have occurred in 1964–1965. A sufficient answer is that the complaint specifically charges a continuing conspiracy to the date of its filing in September 1966. As to two resident defendants, there is documentary evidence that efforts in April 1966 to acquaint them with plaintiffs' charges and to seek redress were not responded to. A fiduciary's duty is a continuing one and a claim of violation may be based upon nonfeasance as well as misfeasance which results in waste of the cestui's assets.[7]

Under the allegation of continuing waste and conspiracy to injure and destroy the business of Airways, liability does not depend upon each defendant participating in all the acts complained of.[8] Moreover, where a fiduciary is chargeable with knowledge that his fellows are acting unlawfully, his failure to disassociate himself from them may be deemed ratification of their

5. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

6. See note 4, supra.

7. Platt Corp. v. Platt, 42 Misc.2d 640, 642–643, 249 N.Y.S.2d 1, 5–6, aff'd, 23 A.D.2d 823, 258 N.Y.S.2d 629 (1st Dep't 1965), rev'd on other grounds, 17 N.Y.2d 234, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966); Holmes v. Crane, 191 App.Div. 820, 826, 182 N.Y.S. 270, 274 (1st Dep't 1920), aff'd, 232 N.Y. 571, 134 N.E. 576 (1922); Litwin v. Allen, Sup., 25 N.Y.S. 2d 667, 701 (1940); Walker v. Man, 142 Misc. 277, 253 N.Y.S. 458 (1931); German-American Coffee Co. v. Diehl, 86 Misc. 547, 149 N.Y.S. 413 (1914), aff'd, 168 App.Div. 913, 152 N.Y.S. 1113 (1st Dep't), rev'd on other grounds, 216 N.Y. 57, 109 N.E. 875 (1915).

8. Baker v. Baker, 122 Misc. 757, 204 N.Y. S. 11 (1924), aff'd, 212 App.Div. 850, 207 N.Y.S. 809 (4th Dep't 1925); Sherwood v. Holbrook, 98 Misc. 668, 163 N.Y.S. 326, aff'd, 178 App.Div. 462, 165 N.Y.S. 514 (1st Dep't 1917); Moran v. Vreeland, 81 Misc. 664, 143 N.Y.S. 522 (1913), aff'd, 162 App.Div. 907, 146 N.Y. S. 1101 (1st Dep't 1914).

conduct and cast him in liability.[9] So too, one who knowingly joins a fiduciary who has engaged in an enterprise violative of his trust is, under the general law applicable to those acting in concert, liable for all that preceded his attachment to the lawful enterprise, as well as for his own conduct.[10]

▮ As to the failure to include the resident defendants in the original action wherein the complaint was filed in April 1966, plaintiffs' position is that when the suit was commenced by the service of a summons in January 1966, they had only begun to discover the fraudulent plans and their investigation in some respects was hindered by their removal, first as members of the Executive Committee in January, and then as directors in February 1966. They contend they thereafter discovered many facts which were not known to them when the first action was commenced, including the connection of the resident defendants with the subject matter of the litigation. Moreover, documentary evidence supports plaintiffs' assertion that requests for a copy of the September 1, 1965 agreement to which First Financial was a party and which it is alleged was so destructive of Airways' interest were not acknowledged until February 1966.

Finally, the plaintiffs contend that the voluntary dismissal of the first action was designed to meet defendants' challenge to jurisdiction based upon New York's long-arm statute which had been amended and in their view favorably enlarged after the commencement of the prior action.

▮ The denials of recreant conduct by the resident defendants or of any knowledge of wrongful acts by the other defendants go to the merits of the action as an entirety. But whether the action is ill-founded or not, we are here concerned only with a jurisdictional issue and matters of defense furnish no ground of removal. No matter how sincere the defendants may be in their denials of wrongful conduct and even though they may eventually be sustained, such denials do not stamp their joinder as fraudulent—any more than plaintiffs' reiteration that their charges are true establish them as fact. Doubtful issues are not to be determined in the removal proceedings.[11]

▮ Upon the record here presented, it cannot be said that the New York State defendants were strangers to or brought into a controversy which did not concern them or that the allegations as to them are baseless.[12] In that circumstance the plaintiffs' dismissal of the original suit in which they were not named and the commencement thereafter in the state court of this action, in which they were included as defendants, does not require a finding that their joinder was fraudulent. Where a complaint gives rise to joint or joint and several liability, the plaintiff has an absolute right to elect, and his motive or purpose in joining or suing separately the claimed tortfeasors is immaterial and, without more,

9. See Phelps Dodge Refining Corp. v. FTC, 139 F.2d 393 (2d Cir. 1943). See also Newfield v. Ettlinger Co., 22 Misc. 2d 769, 194 N.Y.S. 670 (1959), appeal dismissed, 10 A.D.2d 947, 205 N.Y.S.2d 908 (1st Dep't 1960); Van Schaick v. Carr, 170 Misc. 539, 10 N.Y.S.2d 567 (1938); Walker v. Man, 142 Misc. 277, 253 N.Y.S. 458 (1931).

10. Irving Trust Co. v. Deutsch, 73 F.2d 121 (2d Cir. 1934), cert. denied, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935). See also Holmes v. Crane, 191 App.Div. 820, 826, 182 N.Y.S. 270, 274 (1st Dep't 1920), aff'd, 232 N.Y. 571, 134 N.E. 576 (1922) (indicating directors who became

such after wrongful conduct could be held liable if they in any manner approved or ratified the prior wrongdoing); Walker v. Man, 142 Misc. 277, 280–282, 253 N.Y.S. 458, 464–465 (1931).

11. Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1962); Bolstad v. Central Surety & Ins. Corp., 168 F.2d 927, 930 (8th Cir. 1948); Morris v. E. I. Du Pont De Nemours & Co., 68 F.2d 788, 793 (8th Cir. 1934). And see Norwalk v. Air-Way Elec. Appliance Corp., 87 F.2d 317 (2d Cir. 1937).

12. Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914).

does not establish fraudulent joinder.[13] As stated by the Supreme Court: "It has been uniformly held that where there is a *prima facie* joint liability, averment and proof that resident and nonresident tort feasors are jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify a removal from the state court."[14] There the plaintiff administratrix brought three successive suits in the state court, which were removed on diversity grounds to the federal court, and in each instance the administratrix, when her motions to remand were overruled, voluntarily dismissed the action. She then resigned as administratrix and upon her request an administrator was appointed who was a citizen of the same state as defendant and commenced another state action. The defendant again removed the action to the United States District Court, and when the new administrator moved to remand, he, together with the widow and her attorney, were charged with fraud and collusion in having secured the appointment of an administrator whose citizenry was the same as that of the defendant for the purpose of preventing removal. The District Court refused to remand upon a finding that the motive for the administrator's appointment was to defeat the diverse citizenship. Yet the Supreme Court reversed, holding that the facts fell far short of proof of actual fraud to justify removal.

In sum, the court concludes that the removing defendants have failed to sustain their burden of proof that the joinder of the resident defendants was without reasonable foundation in fact so as to constitute a fraudulent attempt to defeat the jurisdiction of the federal courts.

The motion to remand the action to the state court is granted.

13. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 189, 52 S.Ct. 84, 76 L.Ed. 233 (1931); Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914); Chicago, Rock Island & Pac. Ry. v. Dowell, 229 U.S. 102, 113, 33 S.Ct. 684, 57 L.Ed. 1090 (1913); Illinois Cent. R.R. Co. of State of Illinois v. Sheegog, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909); Norwalk v. Air-Way Elec. Appliance Corp., 87 F.2d 317, 320 (2d Cir. 1937).

14. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 189, 52 S.Ct. 84, 87, 76 L.Ed. 233 (1931).